## DAVERN ET AL. *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF DECATUR.

[No. 5,212. Filed November 16, 1904.]

1. STATUTES.—*Gravel Roads.—Petition.—Sufficiency.*—Where it was provided by statute (Acts 1899, p. 128) that the county commissioners should order an election "when petitioned therefor by fifty freeholders, voters of any township or townships contiguous to each other * * * where such road or roads are to be improved," a petition signed in the aggregate by fifty freeholders of the contiguous townships in which such highway or highways were located was sufficient, and it was not necessary that there be fifty signers from each township. p. 47.
2. TAXATION.—*Free Gravel Roads.—Taxing District.—How Formed.* —Where, under the act of 1899 (Acts 1899, p. 128) an aggregate of

fifty freeholders and voters, citizens of the various townships inter-
ested, petition for an election to decide as to the construction of free
gravel roads for such townships, and an election is held, the taxing
district for the purpose of paying for such construction is formed
when a majority of the votes cast in such townships, in the aggregate,
are in favor of such construction, it not being necessary for a ma-
jority of each township to be in favor of such construction.    p. 48.

3.   TAXATION.—*Taxing District.—Public Improvements.—Validity.*—A
statute creating a certain district containing free gravel roads or
other public improvements a taxing district for the purpose of bearing
the cost of such roads or other public improvements is for a govern-
mental purpose and is valid, the remedy for such, if unwise or
oppressive, being for the legislature and not for the courts.    p. 48.

4.   STATUTES.—*Free Gravel Roads.—Power to Lay Out New.*—Where
the statute for the construction of free gravel roads (Acts 1899,
p. 128) provides, "if any part of the road or roads is to be new road
or roads, they shall be described with such a definiteness as will
enable any practical surveyor to locate them" it is sufficiently clear
that new roads are contemplated as well as the old, and the board has
the power to order the construction of a free gravel road where no
highway theretofore existed.    p. 51.

From Decatur Circuit Court; *B. L. Smith,* Special
Judge.

Action by Daniel Davern and others against the Board
of Commissioners of the County of Decatur.  From a de-
cree for defendant, plaintiffs appeal.  *Affirmed.*

*Davison Wilson* and *J. F. Goddard,* for appellants.
*B. F. Bennett, T. E. Davidson, Hugh Wickens* and *J. E.
Osborn,* for appellee.

COMSTOCK, J.—Appellants sought to enjoin the board
of commissioners of Decatur county from submitting to
the voters of Adams and Clinton townships, of said county,
at a regular or special election, the question of improving
certain roads and highways in said townships, and to im-
prove certain new roads and parts of roads not theretofore
opened, laid out or established, upon the ground that the
commissioners did not have jurisdiction of the subject-mat-
ter.    The court sustained appellee's demurrer to the

amended complaint, and its special demurrers to each of the eight separate specifications thereof. Appellants refusing to plead further, judgment was rendered in favor of appellee for costs. These rulings are assigned as error.

The amended complaint, in substance, shows that on the 6th day of August, 1900, a petition was presented by Charles B. Miller and others, praying for the improvement of certain roads and highways, described therein, in Clinton and Adams townships, Decatur county, Indiana, by graveling, paving or macadamizing; and when so graveled, paved or macadamized to be free of toll. The complaint shows that three copies of the petition were written, and the copies circulated and signed separately—each petitioner signing but one copy—but that these copies were attached together and filed as a single petition. Said petition before any signatures were obtained stated: "This petition is written in triplicate and all three of said copies are to be presented together and considered as a single petition." The copy designated as exhibit A was presented by the resident freehold voters of Clinton township, which showed affirmatively that the petitioners were resident freehold voters of said Clinton township, in number twenty-five, and less than fifty. The second copy of said petition, designated as exhibit B, was presented by resident freehold voters of said Adams township, and in numbers more than fifty. The third was presented by the resident freehold voters of said Adams township, and that copy affirmatively showed that the petitioners were freehold voters of said township, and in number twenty-seven.

On the 7th day of August, 1900, said board of commissioners, passing on said petitions, found that they constituted but a single petition, and were treated by the board and intended by the petitioners as a single petition; that the system of roads was a continuous and connected system extending in and through said township, except the Foster Schoolhouse and Mount Moriah roads, which did not con-

nect with each other or any other main road. The said board also found that said petition was signed by fifty freehold voters of Adams and Clinton townships, and appointed a civil engineer and viewers, and ordered an election to be held on a day to be fixed in the future. The petition asked to have improved certain new roads and parts of roads lying wholly within the township of Adams, alleging that said new roads or parts of roads had not previously been opened, laid out or established; and the petition did not aver that said new roads or parts of roads would shorten the route, straighten the roads, and give better drainage. Said petitions were signed by different persons, circulated, signed and executed separately and independently of each other. The proposed improvement, including bridges, culverts and drains would exceed four per cent. of the taxable property of the said township, and the ordering of the proposed improvement was in violation of law, as there was not at the time of the filing of said petition any gravel road fund for the payment of the expenses and per diem of the engineer and viewers. It is not shown that any report on said petition or estimate of cost of the road has been made by the viewers and engineer, or what would be the cost of the road, or the value of the taxable property.

Appellants discuss and contend for but two propositions: (1) To create a taxing district of two or more townships, the petition should be signed by fifty freehold voters of each township; (2) the board of commissioners have no power under the statute to construct a gravel road over a route not already laid out or established according to statute.

1. Said petition was presented under an act approved February 24, 1899 (Acts 1899, p. 128). That part of the act applicable to the question before us reads as follows: "That the county commissioners of any county in this State, when petitioned therefor by fifty freeholders, voters of any township or townships contiguous to each other, * * * inhabitants in such county, where such road or

roads are to be improved ＊ ＊ ＊ shall submit to the voters of said township or townships, towns and cities in said township or townships ＊ ＊ ＊ ." The words "fifty freeholders, voters of any township or townships contiguous to each other, ＊ ＊ ＊ where such road or roads are to be improved," show that but fifty freeholders are required from one or more of the townships. Construction of a statute is resorted to only when the words employed are ambiguous or of doubtful meaning. Neither of these reasons exist in the language quoted.

2. It is contended by appellants that the words "any township" when applied to a district composed of two or more townships, have the meaning of "every township;" and that the interpretation that only fifty freehold voters are required to petition for all the townships would result in an injustice not contemplated by the legislature. To quote the illustration given in appellants' brief: "Decatur county is composed of nine townships, eight of which are contiguous with Washington, in which the city of Greensburg is located. Thus, according to appellee's construction, forty-four freeholders, voters of Washington township, and one freeholder from each of the other seven townships, could create a taxing district composed of eight townships." A township is but an artificial municipal division. People in one township may have an interest in the highways of another township. In many instances portions of an adjoining township are nearer than portions of the township in which a freeholder resides. The mere filing of the petition does not create the taxing district. It comes into existence only when "a majority of the voters on said question are in favor of building such road or roads."

3. A tax to construct a road or for other public improvements in one portion of the municipality at the general expense of the taxing district is for a governmental purpose and is valid. Cooley, Taxation (2d ed.), pp. 130-133, 146-152, 682; Elliott, Roads and Sts. (2d ed.), §§83, 450, 460;

*Gilson* v. *Board, etc.* (1891), 128 Ind. 65, 11 L. R. A. 835. The remedy for such taxation, if unwise, unjust or oppressive, must be sought from the legislative, and not the judiciary department of the State. *Lowe* v. *Board, etc.* (1901), 156 Ind. 163.

The case of *Gilson* v. *Board, etc., supra,* is in point, and sustains our construction of the statute. The case involved the purchase of a toll road passing through the townships of Center, Jackson and Rushville, in Rush county. It was said on page 67: "Fifty freeholders of the townships of Center, Jackson and Rushville, in Rush county, * * * filed in the office of the auditor of said county a petition signed by them, praying the board of commissioners of said county to submit to the voters of said townships, at a special election, the question of purchasing a certain toll road * * * in the said county. * * * Such proceedings were had under this petition that the road was appraised, the election was ordered, notice thereof given, the election held, and a return thereof made to the board of commissioners of Rush county. The board determined that a majority of the votes cast at such election was in favor of the purchase of the road, and thereupon entered an order to purchase the same. * * * A majority of all the votes cast in Center township was against the purchase, but a majority of all the votes cast in the three townships voting at such election was in favor of purchasing the road." The petition was not signed by fifty freehold voters in each township, and, while the opinion does not in terms state that to be unnecessary, but one inference can be drawn from the conclusion reached.

The petition in the case of *Gilson* v. *Board, etc., supra,* was filed under an act of the General Assembly approved March 8, 1889 (Acts 1889, p. 276), the language of which is almost identical with that of the act governing the case at bar. In the course of the opinion the court said: "This

Vol. 34—4

statute not only provides for taxing districts, but it divides
such districts into two classes, namely: (1) Districts
composed of a single township, where it determines to pur-
chase a toll road, or a part of a toll road, within its limits;
and (2), a district composed of two or more townships
where they jointly determine, by a proper vote, to purchase
a toll road, or part of a toll road, running into or through
all the townships voting for such purchase. This case falls
within the second class, and if a majority of the votes cast
in that district was in favor of purchasing the toll road
mentioned in the complaint, it was the duty of the board
of commissioners of Rush county to make such purchase.
The contention that the other townships had no power to
vote a tax upon Center township without its consent, is
not tenable, for the reason that Center township elected to
become a part of the taxing district by signing the petition
praying the board of commissioners to make a purchase of
the toll road, in the manner prescribed by law. Had there
been no freeholders found in Center township to sign the
petition, then it would have been impossible to vote a tax on
the property of that township with which to purchase the
toll road; but when its freeholders saw fit to join with the
other townships in a petition to purchase the road, we think
it became a part of the taxing district, and took its chances
on the result of the vote upon the question submitted." At
page seventy-four of the opinion last cited it is stated that,
"had it been the intention of the legislature that the pur-
chase should depend on the result of the election in each
township, it is reasonable to assume that the legislature
would have provided for several petitions and several elec-
tions, and would have made no provision for joint petitions
and a joint election;" thus holding, inferentially at least,
that the petition and election are joint, and not several. In
the recent case of *Brown* v. *Miller* (1904), 162 Ind. 684,
it is expressly held that it is sufficient if the petition be

signed by fifty or more freeholders of the taxing district, whether the same is composed of one township or more.

4. The portion of the act pertinent to appellants' second proposition is as follows: "If any part of the road or roads is to be new road or roads, they shall be described with such a definiteness as will enable any practical land surveyor to locate them." Acts 1899, p. 128. Immediately preceding the foregoing quotation the statute reads: "Provided further, that the petition of the fifty freeholders aforesaid shall clearly and definitely describe the beginning and terminus of each road or roads, giving the common name and general direction of all roads together with their measured or estimated distances." The statute manifestly contemplates new roads as well as those already in existence. *Brown* v. *Miller, supra.*

Appellants cite *Crow* v. *Judy* (1894), 139 Ind. 562, in support of the proposition that "The board of commissioners have no power under the statute to construct a gravel road over a route where no highway previously existed." The petition in that case was filed under an act of the General Assembly approved March 3, 1877 (Acts 1877, p. 82, §§5091-5096 R. S. 1881). That case holds that §§5091, 5092, *supra,* make no provision for opening new roads. No language equivalent to that used in reference to new roads, under the act under consideration, appears in said §§5091, 5092. Since the decision, the legislature amended the act conferring the power to establish any portion of such improvement petitioned for upon lands where there are no highways established at the time the petition is filed. Acts 1901, p. 72, §6855 Burns 1901.

In the case of *Gipson* v. *Heath* (1884), 98 Ind. 100, cited in *Crow* v. *Judy, supra,* the petition was filed under §5091, *supra,* authorizing the construction of a highway upon a new route when necessary to shorten or straighten a road, to secure a better route, or for the purpose of drain-

age.   The reasonable construction of the act under which these proceedings were had authorized the action of appellee.

Counsel for appellee earnestly contend that the copies of the petition filed as exhibits with complaint are not the basis of the action, and without them the facts stated are not sufficient to constitute a cause of action; that appellants had another and adequate remedy than injunction; and that for each of these reasons, if for no other, the demurrer to the complaint was properly sustained.   The exhibits were not the basis of the action, but upon these questions we have not deemed it necessary to pass.

Judgment affirmed.