BOARD OF COMMISSIONERS OF SWITZERLAND COUNTY
*v.* REEVES ET AL.

[No. 18,096.  Filed April 28, 1897.  Rehearing denied October 8, 1897.]

GRAVEL ROADS.—*Construction.—Irregularities.—Injunction.*—The act of 1893, as amended by act of March 7, 1895 (Acts 1895, p. 143), providing for the construction of free gravel roads, confers upon the board of county commissioners judicial power, and mere irregularities in proceedings before such board of commissioners in proceedings to establish a free gravel road will not furnish any ground for an injunction.  *p. 471.*

SAME.—*Tax Levy for.—Personal Notice.—Constitution Construed.*— The act of 1893, as amended by act of 1895 (Acts 1895, p. 143), providing for the levy of taxes on the taxable property of a township for the construction of free gravel roads without personal notice upon each taxpayer of such township, is not within the constitutional inhibition of taking property without due process of law.  *pp. 471, 472.*

SAME.—*Bonds.—Not Debt of Township.—Constitution Construed.*— The debt created in the construction of free gravel roads under the provision of the act of 1893, as amended by act of 1895 (Acts 1895, p. 143), is not the debt of the township, and bonds issued for the payment therefor in a sum in excess of two per centum of the value of the taxable property within such township is not within the inhibition of article 13 of the constitution limiting the indebtedness of a political corporation to two per centum of the value of the taxable property therein.  *pp. 473-476.*

SAME.—*Lands Taken for.—Compensation to Owner.*—Parties whose lands will not be appropriated for the construction of a free gravel road under the provision of the act of 1893 as amended by the act of 1895 (Acts 1895, p. 143), cannot invoke the provision of the state constitution prohibiting the taking of property without compensation, to defeat the construction of such road.  *p. 476.*

CONSTITUTIONAL LAW.—*Amendments.*—The Supreme Court will not inquire into alleged irregularities in the passage of an act amending

the constitution, where it was duly authenticated by the proper officers of each house as having been agreed to by both houses. *pp. 476, 477.*

From the Switzerland Circuit Court. *Reversed.*

*George S. Pleasants, C. S. Tandy* and *F. M. Griffith,* for appellant.

*W. R. Johnston,* for appellees.

McCabe, J.—The appellees sued the appellant to enjoin it from issuing bonds to build certain gravel roads in York township in Switzerland county. The defendants answered in confession and avoidance leading to issues of fact. The trial court overruled a demurrer to the complaint for want of sufficient facts, and sustained such a demurrer to the answer; and the defendants declining to plead further, judgment was rendered awarding the relief prayed in the complaint on the ruling sustaining the demurrer to the answer. The only action of the trial court called in question by the assignment of errors, is as to its rulings on the demurrers above mentioned. The substance of the complaint is: That on the — day of March, 1896, William H. Scott and other citizens and freeholders of York township, in said county, filed their petition before said board, praying said board to grant an order to submit to the voters of said township the question of building three free gravel roads, which was granted on said day; and said board ordered a special election to be held in said township on April 28, 1896, on the question of building said three roads; that notice was given of said election as required by the statute approved March 7, 1895; that said election was held pursuant to said statute, order, and notice, to determine the question by the legal voters whether the said three gravel roads, which are described, should be built; that said election resulted in a majority of the legal voters

of said township voting for the construction of said
proposed three gravel roads; that there was no vote
authorized or voted at said election upon the question
of building any one, or any two of said roads; but the
only question voted upon at said election was whether
or not all three of said proposed roads should be built;
that the taxable value of the entire taxable property
within said York township, as ascertained by the as-
sessment last prior to said election, was $417,000.00
and no more, which last assessment thereof was made
for State and county taxation; that the indebtedness
of said township immediately prior to said election
exceeded, and now exceeds, the sum of $8,424.33; that
the cost of building said proposed free gravel roads,
will, according to the estimate made by the proper au-
thority, exceed $20,000.00; that the estimate was made
by three persons named, pursuant to the order of said
board appointing and requiring them to make such
estimate, upon the petition already mentioned; that if
said free gravel roads are constructed, said township
will thereby become indebted to an amount, in the ag-
gregate, far exceeding two per centum of the value of
taxable property within said township as ascertained
by the last assessment for State and county taxes pre-
vious to the incurring of such indebtedness, contrary
to article 13 of the constitution of Indiana; that the
whole of the proceedings above mentioned have been
and are conducted under and by virtue of the act of
the General Assembly of this State, entitled "An act
concerning the construction of free gravel, stone, or
other macadamized roads," providing for their loca-
tion, the manner of their construction, and providing
for the payment of the same, and for their mainte-
nance, and declaring an emergency, approved March
3, 1893, as amended by the act appoved March
7, 1895, and by no other authority whatever; that one

of said roads, if constructed, will run through the lands of eleven different owners named, a part of each of which tracts will be taken and appropriated for said proposed road by virtue of said act; but neither of the plaintiffs own any such lands; that said township is now indebted on account of bonds heretofore issued by said board for the building of other free gravel roads heretofore built, $6,520.00; debt against the special school fund, $184.60; debt against the township fund, $719.73. That said township has on hand the following sums of money belonging to the several funds, to-wit: Dog tax fund, $53.00; road fund, $339.46; special school fund, $516.11; township fund, $580.71; total $1,489.28. That there has been collected by the treasurer of said county the sum of $594.26, which is applicable to the payment of the bonds above mentioned; that there is no money on hand or to the credit of said township applicable to the payment of the indebtedness about to be created, said township having no money on hand whatever except as above stated; that the construction of the two roads which are advertised to be let to bidders on the 20th of the present month will, according to the estimate of the viewers, cost $11,238.23, and the other road named in said petition will according to said estimate cost $10,260.57, and said roads will cost as much as said estimate; that said board has not yet advertised for bids for the construction of the third road named in said petition, but has continued the same; that unless restrained, said board will, on the day advertised, receive bids and enter into contracts for the construction of said two roads, and will issue bonds of said county for the purpose of raising money to pay for the construction of said roads, and will thereby incur an indebtedness against said township in a sum which, together with its existing indebtedness, will far exceed two per centum of the value of

the taxable property within said township, as ascertained by the last assessment for State and county taxes. The plaintiffs are residents and taxpayers of said township, each owning property therein subject to taxation. Prayer for an injunction. The act of the legislature referred to, upon which the action of the board sought to be enjoined is founded, in the opinion of the writer, confers on the board nothing but ministerial or administrative authority, and does not clothe them with any judicial power or authority whatever. *Board, etc.,* v. *Davis,* 136 Ind. 503; *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476; *Board, etc.,* v. *Heaston,* 144 Ind. 583, and authorities there cited. Therefore, no question is presented by the demurrer to the complaint, in the opinion of the writer, as to a collateral attack upon judicial proceedings of the board of commissioners as appellees' counsel seem to suppose. But the majority of the court hold that the act does confer judicial power on the board of commissioners, and does require of them the exercise of judicial functions; and that if the board had jurisdiction of the subject and the parties, mere errors and irregularities in the proceedings would not furnish any ground for an injunction. *Stoddard* v. *Johnson,* 75 Ind. 20; *Ricketts* v. *Spraker,* 77 Ind. 371; *Million* v. *Board, etc.,* 89 Ind. 5; *Ely* v. *Board, etc.,* 112 Ind. 361; *Hobbs* v. *Board, etc.,* 116 Ind. 376; *Bowen* v. *Hester,* 143 Ind. 511.

Nor does the fact that the act under which the proceedings and election were held makes no provision for the service of a personal notice upon each tax payer in the township bring the statute within the inhibition of the constitution, either state or federal, against taking property without due process of law. The act provides only for a special mode of levying taxes on the taxable property of the township for a

public purpose. Such taxes may be levied without the personal presence of the tax payer. *McMillen* v. *Anderson*, 95 U. S. 37.

The act provides that the propriety of levying the tax and building the road or roads may be submitted to the legal voters of the township by the board, and provides for giving notice of such election through a newspaper of general circulation, published in the county, and posting up notices thereof at certain places; the latter being sufficient where there is no such paper in the county This notice was given. If a majority of the votes cast are against the construction of the proposed road or roads, that is the end of the matter; and if a majority be for it, then the act provides that the board of commissioners shall at once proceed to construct the same. They are then required to issue and sell the bonds of the county with which to raise the money to pay therefor, precisely as is required in the act of 1877 and 1885, except under those acts the assessed benefits to the lands within two miles of the road are to be collected to pay the bonds; but under the act now in question a special tax is required to be levied on all the taxable property in the township to raise a fund to pay the bonds. The legislature could have empowered the board to levy the tax and build the road without submitting its propriety to the voters of the township. This feature of the act in no way infringes any constitutional limitation. Nor is the fact that three roads were voted for at once, and so submitted as that the voters must vote against or for all the roads, any objection to the validity of the election, because the amended second section expressly authorizes the propriety of the construction of more than one road to be submitted to the voters as a unit. See *Board, etc.*, v. *Harrell*, 147 Ind. 500. Nor does this statutory provision infringe any

constitutional provision. *Board, etc.,* v. *Harrell, supra.* The principal contention of the appellees in support of the ruling of the trial court is that the bonds to be issued to raise the money with which to pay the estimated cost of the construction of the two roads which the board is about to issue and sell, will create an indebtedness against the township which, when added to that already existing against York township, will make a debt in excess of two per centum of the value of the taxable property within said township, in violation of the 13th article of the constitution. But if the rule laid down in *Board, etc., Harrell, supra,* is to stand as the law upon the point now under discussion, then such contention cannot be maintained. Because it was there directly decided that the debt thus created is not the debt of the township, and hence no infringement of said article of the constitution which only inhibits the creation of a debt of a political or municipal corporation in excess of two per centum on the taxable property within such corporation. The writer hereof is of opinion that that case is wrongly decided on that point. The following case is cited in that opinion to the point that bonds issued by a city to raise funds to pay for the construction of certain street improvements, the cost of which is assessed against the abutting property, is not a debt of the city, to-wit: *Quill* v. *City of Indianapolis,* 124 Ind. 292. And the following list of cases is also cited in the Harrell case to the point that bonds issued by the board of commissioners to build gravel roads under the other free gravel road acts, similar in this respect to the one now in question, do not constitute a debt of the county, namely : *Strieb* v. *Cox,* 111 Ind. 299; *Burton* v. *State,* 111 Ind. 600; *Board, etc.,* v. *Fullen,* 111 Ind. 410; *Board, etc.,* v. *Hill,* 115 Ind. 316; *Board, etc.,* v. *Fullen,* 118 Ind. 158; *Board, etc.,* v. *Fahlor,* 114 Ind. 176;

*Spidell* v. *Johnson*, 128 Ind. 235; *Gavin* v. *Board, etc.*, 104 Ind. 201; *Little* v. *Board, etc.*, 7 Ind. App. 118; *Walker* v. *Board, etc.*, 11 Ind. App. 285; *Braun* v. *Board, etc.*, 17 C. C. A. 166, 70 Fed. 369.

This ought to be sufficient to establish that such bonds in this class of cases are not the debt of the city in the one case, or the county in the other. If they are not the debt of the county, and not the debt of the township as is held in the case referred to, doubtless, in the opinion of the writer, the taxpayers of York township will always feel a lively interest in knowing whose debt they are, or will be if issued and sold. It will hardly do to say, in the opinion of the writer, that they will be nobody's debt. And it is just as easy, in his opinion, and far more reasonable to say that they will be the debt of York township, as it is to say that they will be the debt of the several taxpayers of York township. Indeed, it is, in his opinion, impossible to say with reason that such bonds would constitute the debt of the several taxpayers of the township, because, when they have paid the special tax assessed against their property on account of said bonds, they will have discharged every obligation resting on them on account of said bonds, and yet the bonds would not be paid. The question whose debt would the bonds be, if not that of the township, remains unanswered, in the opinion of the writer. While the bonds would in form be the debt of the county, yet in substance, law, and in fact, they would not be the debt of the county, as the decisions of this court fully establish. In substance, though not in form, they would, in his opinion, be the debt of the township. They would, in his opinion, be the debt of the township in substance, as much as if the political corporation of the township had issued and sold them, and its officers had levied a tax upon the taxable property of the township to raise

money to pay them.   The fact that the statute author-
izes other officers to issue the bonds, no matter in
whose name, and to raise money to pay them by levy-
ing a tax on the taxable property of the township, in
the opinion of the writer, makes only a difference in
form, not in substance.   This was a suit in equity.   As
was said in *Board, etc.,* v. *Gwin,* 136 Ind. at p. 582:
"Equity looks at the intent rather than the form; it
always attempts to get at the substance of things, and
to ascertain, uphold, and enforce rights which spring
from the real relations of parties.   It will never suffer
the mere appearance and external form to conceal the
true purposes, objects, and consequences of a trans-
action."

In form, the bonds would be the debt of the county,
but in substance, as we have seen, they would not, but
would, in the opinion of the writer, be the debt of the
township.   A court of equity always looks through
and disregards mere forms, to the substance of things.
If that were not so, in the opinion of the writer, the
legislature may in every instance evade the 13th
article of the constitution and make it practically a
dead letter.   To accomplish that result, whenever it
deems it desirable that a political or municipal cor-
poration should become indebted in excess of the limit
prescribed in that article, all that would be necessary
to do so, in the opinion of the writer, would be to
enact a statute authorizing the board of commission-
ers to issue and sell bonds in the name of the county,
and levy a tax upon the taxable property within the
political or municipal corporation to pay the bonds.
Thus, this constitutional barrier, in the opinion of the
writer, can, in every conceivable instance, be evaded
by the legislature, if the act now under discussion does
not fall within its purview

But the majority of the court are of opinion that the

act does not fall within the purview of the 13th article of the constitution, because the bonds about to be issued and sold under it will not, when so issued and sold, be the debt of York township, and that the case of the *Board, etc.,* v. *Harrell, supra,* was correctly decied upon this point, and adhere to it. On the authority of that case it must be held that the bonds, the issue and sale of which are enjoined by the judgment and decree of the trial court, would not constitute, if issued and sold, a debt of York township, and therefore do not fall within the inhibition of article 13 of the constitution.

The appellees also seek to uphold the ruling of the trial court by contending that the act in question is unconstitutional in authorizing the construction of the gravel roads without notice to the property owners. But we have seen that such contention cannot be maintained. The act provides for notice of the election, as we have seen, which is the initiative step in the whole proceeding. The power involved is the power of taxation for a public purpose. The exercise of this power could have been authorized by the legislature without any notice.

Another objection to the constitutionality of the act made by appellees is that it nowhere provides for compensation of the owners of lands over which the roads are to pass, where it is a new road. But it is a sufficient answer to this contention to say, that none of the plaintiffs are claiming that any of their lands have been or will be appropriated if either or all of the proposed roads are built. As long as the constitutional objection urged does not affect appellees' rights, they cannot invoke the power of the court to pass on it. *Henderson, Auditor,* v. *State, ex rel.,* 137 Ind. 552.

The appellant, however, vigorously contends that article 13 of the constitution was not adopted accord-

ing to the forms prescribed in the constitution for its own amendment. The contention is that when in the form of a resolution proposing an amendment to the constitution, it was defeated in the house, when being considered by the second legislature, the body to which it had been referred by the previous legislature. But it is not denied that the proper officers of each house, preliminary to the submission of the article to the voters of the State, had duly authenticated the same as having been agreed to by both houses. This court, under such circumstances, refused to inquire into the fact alleged, that the article had not been agreed to by both houses, in *Brashear* v. *City of Madison*, 142 Ind. 685, 691, especially as a majority of the voters of the State voted for said article.

It follows from what we have said that the circuit court erred in overruling the demurrer to the complaint, for which error the judgment must be reversed, while the writer is of opinion that the judgment ought to be affirmed.

The judgment is therefore reversed, with instructions to the trial court to sustain the demurrer to the complaint.