[No. 1867.   Dec. 9, 1915.]
[Rehearing Denied March 16, 1917.]

## BORROWDALE ET AL v. BOARD OF COUNTY COMMISSIONERS OF SOCORRO COUNTY.

### SYLLABUS BY THE COURT.

1.   Under section 24, art. 4, of the state Constitution, the Legislature has the power to pass local or special laws as to state roads extending into more than one county.   A legislative act, which creates a designated route extending into more than one county as a "state highway" and makes provision for the working and opening of the road in one county only, is not violative of the above constitutional provision.                                                        P. 5

2.   Conceding that chapter 23, Laws 1915, created a "state highway" as therein described, it was competent for the Legislature to provide for its construction and improvement in one county by any officer or agent it might select.   Hence the designation in said act of the board of county commissioners of Socorro county, as the agency of the state, to open and improve said highway, was not violative of the Constitution, and was not an attempt to regulate county affairs by a local or special law.                          P. 6

3.   Section 24, art. 4, of the Constitution provides:   "The Legislature shall not pass local or special laws in any of the following cases:   Regulating * * * the assessment or collection of taxes or extending the time of collection thereof."

Held, that this section does not prohibit the enactment of a special law levying a tax for the construction of a state road, the assessment and collection thereof being governed by general law.

The above constitutional provision simply prohibits special legislation regulating those acts which the assessors and collectors of taxes generally perform, and which are denominated "assessments" and "collection" of taxes, and does not prohibit the Legislature from directing the levy of a special tax for a state road within a given county.        P. 8

4.  The act in question does not violate section 1 of article 8 of the Constitution, which requires that taxes shall be equal and uniform upon subjects of taxation of the same class, by requiring the levy of a special tax upon all the taxable property within the county of Socorro for the purpose of providing a fund for the improvement of the said highway, as the act in question creates a special taxing district for the purpose of improving the highway in question, which the Legislature had the power to do.        P. 16

5.  Where commissioners are charged with the duty of levying a tax within a given county for the improvement and repair of a state highway, and levy such tax, and thereafter, in anticipation of the revenue to be derived from such tax, borrow money for the improvement of the highway, such debt, so incurred, is not the debt of the county, but of the special taxing district created by the Legislature; hence the act in question in this regard is not violative of section 10, art. 9, of the Constitution, which prohibits counties from borrowing money until after the proposition to create such debt shall have been submitted to the qualified electors of the county, etc.        P. 23

6.  "Laying out" is, and has been from the earliest times, the appropriate expression for locating and establishing a new highway.        P. 5

7.  In Const. art. 4, § 24, forbidding the Legislature to pass local or special laws regulating the assessment or col-

Borrowdale v. Board Co. Com., Socorro Co., 23 N. M. 1.

lection of taxes, the word "assessment" denotes the official estimate of the sums which are to constitute the basis of the apportionment of the tax between the individuals subject to taxation within the district, as distinguished from the levy.                                                      P. 8

Hanna, J., dissenting.

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Action by William M. Borrowdale and others against the Board of County Commissioners of the County of Socorro. Judgment for defendant dismissing the complaint on demurrer thereto, and plaintiffs appeal. Affirmed.

J. G. Fitch, of Socorro, for appellants. Barnes & Nicholas of Socorro, for appellee.

STATEMENT OF FACTS.

This action was instituted in the court below by the appellants, who are all alleged to be taxpayers of Socorro county, for the purpose of enjoining and restraining the board of county commissioners of the county of Socorro from constructing the highway, authorized and required to be constructed by chapter 23, Laws 1915. This act will be found in the footnote.

CHAPTER 23.

Be it enacted by the Legislature of the state of New Mexico:

Section 1. That there is hereby created a state highway to start at Hondo post office, in Lincoln county, New Mexico, and to run via Lincoln, Capitan and Nogales to Carrizozo, from whence it shall run by the most practicable and feasible route to the city of Socorro, in Socorro county, New Mexico, thence, following the route of what is known as the "Ocean to Ocean Automobile Route," to Magdalena in said county of Socorro, then via the most practicable and feasible route, by way of the N-Bar Ranch and down Silver creek, to the town of Mogollon in Socorro county, New Mexico.

Sec. 2. That the board of county commissioners of Socorro county is hereby directed tc cause to be made in the years 1915 and 1916 a levy of not to exceed two mills on each dollar of taxable property in said county for the purpose of providing funds for the working and construction of that

portion of the said state highway which lies between the
city of Socorro and the town of Mogollon in said county.

Sec. 3. The proceeds of the levies herein provided for
shall be kept by the county treasurer of said Socorro county
in a fund to be known as the Socorro-Mogollon road fund,
and shall be expended by and under the authority and super-
vision of the board of county commissioners of said county
upon that part of the said state highway which lies between
the city of Socorro and the town of Mogollon.

Sec. 4. The board of county commissioners of Socorro
county is hereby authorized to anticipate the proceeds of
the levies hereinabove provided for by borrowing money, the
amount not to exceed the total proceeds of said levies, at
a rate of interest not exceeding eight per centum per annum;
and the said board is further authorized to solicit and
receive contributions to assist in the construction of said
portion of said state highway, and any funds contributed for
such purpose shall be deposited in, and credited to the
Socorro-Mogollon road fund hereinabove provided for and
expended in the same manner as the proceeds of the levy
hereinabove authorized.

Sec. 5. That chapter 27 of the Session Laws of 1913 and
all acts and parts of acts in conflict with this act is hereby
repealed.

Appellants also sought to enjoin and restrain the levy
of the tax required by the act and the borrowing of money
therein authorized. The complaint alleged that the said
act was unconstitutional and void for the following rea-
sons: (a) That it is a local or special law for the laying
out, opening, or working of a road or highway not in
fact extending into more than one county, but lying and
being wholly within the county of Socorro. (b) That said
act is a local or special law regulating county affairs,
in that it attempts to vest in the appellees special au-
thority and supervision of said proposed highway and its
construction. (c) That said act is a local or special law
for the assessment and imposition of a special tax, in all of
which particulars said law is in violation of article 4, § 24,
of the Constitution. (d) That said act is violative of
article 8, § 1, of the Constitution, which requires that taxes
shall be equal and uniform upon subjects of taxation of
the same class. (e) That said act is in violation of article
9, § 10, of the Constitution, prohibiting counties from bor-
rowing money until after an election to create such debt
has been held and the proposition approved.

Appellees filed a demurrer to the complaint, for want of facts, which was sustained by the trial court. Appellants refused to plead further, and final judgment was entered, dismissing the complaint. From such judgment this appeal is prosecuted.

ROBERTS, C. J. (after stating the facts as above). [**1, 6**] Appellants' first contention is that the act in question is violative of section 24, art. 4, of the Constitution, which prohibits the Legislature from passing local or special laws in certain enumerated cases, among which is the following:

"Laying out, opening, altering or working roads or highways, except as to state roads, extending into more than one county."

The argument advanced, if we understand appellants' position, is that, because no provision is made for the working of that portion of the highway in the county of Lincoln, the force and effect of the act is only for the "laying out, opening, altering or working" a highway in one county, hence falls within the constitutional inhibition. Concededly, it was competent for the Legislature, under the constitutional provision, supra, to lay out the highway in question.

"'Laying out' is, and has been from the earliest times, the appropriate expression for locating and establishing a new highway." Foster v. Park Com'rs., 133 Mass. 321.

By the act in question, the Legislature attempted to lay out and establish a described route extending into two counties as a state highway. Whether the description was sufficient to accomplish the purpose is aside from the question here involved, because, if the description of the proposed route was so defective that the law would fail of its purpose, it would not for such reason be a law "laying out" a highway in one county; thus we approach the question here, which resolves itself into the simple proposition as to whether the Legislature may constitutionally

provide for the working of a state highway by a special mode in one county, not common to all the counties through which the highway is laid out. This question is answered in the affirmative, by the Constitution, if the Legislature had the power to declare that a certain described route should be a state highway. If such power does not reside in the Legislature, we fail to see how it would be possible to create a state road extending into more than one county. The initial step must be a declaration that a given route "shall be a state road" extending into more than one county. Necessarily such a declaration must precede, or be concurrent with provisions for opening, altering, or working the same.

The territorial Legislature in 1905, chapter 7, Laws 1905 (section 2707, Code 1915), established a public highway through the then territory of New Mexico, known as the "Camino Real." The description of the road was no more definite than the act now under consideration.

Conceding the power on the part of the Legislature to designate a described route as a state highway extending into more than one county, no other constitutional provision intervening, it is competent for the legislature to provide for the opening and working of said highway in one county only. Were such not the case, a state road would necessarily be required to be opened and worked simultaneously in all the counties through which it ran.

It was plainly the purpose and intent of the framers of the Constitution to give the Legislature a free hand in the matter of state roads extending into more than one county so that the means of communication between the different parts of the state might be improved. The act in question is not violative of article 4, § 24, of the Constitution.

[2] What has been said above disposes of the contention that the act in question is a local or special law regulating county affairs, in that it attempts to vest in the board of county commissioners special authority and supervision of said proposed highway and its construction. Conceding that the highway in question is a "state road," it was competent for the Legislature to provide for its con-

struction and improvement in one county by any officer or agent it might select. In this act it imposed this duty upon the board of county commissioners of Socorro county. If the road is a "state road" within the meaning of the Constitution, then its construction and supervision was not an attempt to regulate county affairs. Appellant says:

"It is conceded that the Legislature has a right to intrust the laying out, opening or working of a state highway extending into more than one county, to the State Highway Commission, or, under the doctrine of the Wisconsin cases (hereinafter cited in the opinion), to any special commission or persons, or to the county road boards."

This concession disposes of appellants'. argument under this point, for all that the Legislature did was to intrust the working of the road in question, in Socorro county, to the board of county commissioners; not as a county matter, but as the agent of the state, which work has no relation to the affairs of the county. The argument sought to be drawn from the case of State v. Romero, 19 N. M. 1, 140 Pac. 1069, that those provisions of general law creating the county road board evidenced clearly an intent on the part of the Legislature to take away from boards of county commissioners and from road supervisors the general control of roads and to vest that control in the road boards, is not appropos, because there has been no effort on the part of the Legislature to reinvest the board of county commissioners with any of the powers thus taken away from them by the general legislation referred to, or to divest the county road boards of any of the powers conferred upon them by such legislation. That in enacting this statute the Legislature was providing for a case not covered by either the old law vesting the control of county roads in boards of county commissioners, or the new law transferring this control to the county road boards, but was simply providing for the laying out, opening, or working of a state highway extending into more than one county—control of which it admittedly had the power to vest where it would—is plain and logical, and in no sense an interference in any degree with local county affairs or an attempt to regulate them.

In the case of Jensen v. Supervisors, 47 Wis. 298, 2 N. W. 320, it was urged that the act there in question was in violation of the constitutional provision of the state of Wisconsin, which provided that:

"The Legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

In speaking of this contention, that court said:

"That the appointment of commissioners by the Legislature to lay out and establis ha state road which shall extend into two or more counties is not a violation of this provision of the Constitution, is apparent from the fact that the laws respecting the government of towns and counties do not provide for laying out any roads extending from one county into another. * * * There is no system of town or county government to be violated by reason of the laying out and establishing such highways by commissioners appointed by the Legislature."

[3] The third contention is that the act in question is a local or special law for the assessment and imposition of a special tax, in all of which particulars said law is violative of article 4, § 24, of the Constitution.

The constitutional provision in question, in so far as material, reads as follows:

"The Legislature shall not pass local or special laws in any of the following cases: Regulating * * * the assessment or collection of taxes or extending the time of collection thereof."

The act in question directs the board of county commissioners of Socorro county to levy a tax of not to exceed two mills on each dollar of taxable property in said county, for the years 1915 and 1916 for the purpose of providing funds for the working and construction of a named portion of the highway within Socorro county.

[7] If the act in question regulates "the assessment or collection of taxes," it clearly falls within the above inhibition and must fall. It is apparent therefore that

the solution of the question depends upon the sense in which the word "assessment" was employed by the framers of the Constitution. If resort is had to the tax laws enacted by the territorial Legislature from time to time, we find that the word "assessment" was almost always used to denote the official estimate of the sums which were to constitute the basis of an apportionment of the tax between the individuals subject to taxation within the district. It has been employed in describing the various acts of the county assessor, boards of county commissioners, and board of equalization in placing the property upon the tax rolls. The word "levy" was used to describe the acts of the various officials, upon whom rested the duty of levying the tax as distinguished from the duty of listing the persons, property, etc., to be taxed and estimating the sums which were to be the guide in apportioning the tax between them.

In Cooly on Taxation (3d Ed.) p. 596, the author says:

"An assessment, strictly speaking, is an official estimate of the sums which are to constitute the bases of an apportionment of a tax between the individual subjects of taxation within the district. It does not, therefore, of itself lay the charge upon either person or property, but it is a step preliminary thereto, and which is essential to the apportionment. As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them. When this listing and estimate are completed in such form as the law may have prescribed, nothing remains to be done, in order to determine the individual liability, but the mere arithmetical process of dividing the sum to be raised among the several subjects of taxation, in proportion to the amounts which they are respectively assessed. Sometimes the word 'assessment' is used as implying the completed tax list; that is to say, the list of persons or property to be taxed, with the estimates with which they are chargeable, and the tax duly apportioned and extended upon it; but this employment of the word is unusual except in the cases in which the levy is apportioned by benefits, and in those cases the act of determining the amount of the benefits is of itself, under most statutes, a determination of the individual liability, and the result only needs to be entered upon the roll or list to complete the levy."

This text will be found quoted with approval by many

of the courts. A reference to the cases will be found in the footnotes to the text.

In 5 C. J. p. 816, the word "assessment" is defined as follows:

"The designation of the persons or things which shall be the subject of taxation and the apportionment of taxation among such persons or things in the ratio prescribed by law."

In construing the constitutional provision in question, shall we give the word "assessment" its commonly understood meaning, or shall its meaning be broadened so that it shall be construed as embracing all the proceedings for raising money by the exercise of the taxing power from their inception to their conclusion?

Judge Cooley, in his work on Constitutional Limitations (7th Ed. p. 92), says:

"In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning. As Marshall, C. J., says: The framers of the Constitution and the people who adopted it 'must be understood to have employed words in their natural sense and to have intended what they have said.' This is but saying that no forced or natural construction is to be put upon their language; and it seems so obvious a truism that one expects to see it universally accepted without question."

In other words, in construing a constitutional provision, the courts have no more right to broaden the meaning of words used, than it has to restrict or limit such meaning. The courts must arrive at the commonly understood meaning of the words employed, and in that light interpret the provision, unless the sense of the words is influenced by other portions of the instrument. The word here used, in the article under consideration, is not broadened in its meaning by any other provision in the Constitution. If we turn to the article on taxation (article 8), we find nothing to indicate that the constitutional convention did not have a clear understanding of the commonly understood difference between the words "assessment" and "levy," for there we find that the word "levy" is employed to indicate the act of levying the tax, and the word

Borrowdale v. Board Co. Com., Socorro Co., 23 N. M. 1.

"assess" as indicating the valuation of the land for the purpose of taxation.

Similar constitutional provisions are found in other states. Gray, in his work on Limitations of Taxing Power and Public Indebtedness (section 1743), says:

"Among the most frequent forms in which the prohibition of local or special laws appears is the provision that local or special laws shall not be passed 'for the assessment and collection of taxes'; and in a number of instances the prohibition is more narrowly expressed, forbidding such laws 'for the assessment and collection of taxes for state, county, township or road purposes.' Such provisions are generally held to refer only to the mode or manner of assessment and collection, and do not prevent the Legislature from passing a local or special law authorizing a locality to lay a special tax for some particular purpose, not applicable to the other parts of the state. So long as the special tax which is authorized is collected in the same manner a s other taxes are collected, and by the same uniform rule of valuation and rate as other taxes in the same taxing district, there is no violation of the prohibition."

Oregon has a similar provision, with the exception that the word "for" is used instead of "regulating." In that state the Legislature enacted a law which authorized a named municipality to acquire a bridge and ferry and to levy a special tax to pay the expense incident to the purchase. The law was attacked on the ground thta it violated a similar constitutional provision. The court said:

"It is next objected that the act is violative of article 4, § 23, subd. 10, of the State Constitution, which prohibits the passage by the Legislature of special or local laws 'for the assessment and collection of taxes for state, county, township, or road purposes.' The evident purpose of this provision was to prohibit the Legislature from passing a special or local law providing a mode or manner for the assessment and collection of taxes in the enumerated cases which would interfere with or contravene the method of assessing and collecting taxes as provided by the general law, but not in our opinion to inhibit the Legislature from authorizing or requiring a county to levy and collect a tax at the same time and in the same manner as other taxes are levied and collected for specified public purposes, and that is all the law in question required." Simon v. Northrup, 27 Or. 487, 40 Pac. 560, 30 L. R. A. 171.

See, also, Oregon City v. Moore, 30 Or. 215, 46 Pac. 1017, 47 Pac. 851

The Supreme Court of Nevada, in the case of Gibson v. Mason, 5 Nev. 283, considered a constitutional provision identical with the Oregon section. The court said:

"It is next argued that this law is repugnant to section 20, art. 4, which prohibits the Legislature from passing local or special laws upon certain subjects, among which is that for the assessment and collection of taxes for state, county and township purposes. By this provision it was evidently intended simply to inhibit local or special laws, respecting or regulating the manner or mode of assessing and collecting taxes.

. "'Assessment,' as used in this section, evidently has reference to the duties of the subordinate officer, known under our laws as an assessor, whose duty it is to ascertain the value of the taxable property, and determine the exact amount which each parcel or individual is liable for. The word 'for,' too, must mean, with respect to, or with regard to, which is a definition given to it by lexicographers, and thus the language of the section will read: With respect to or regard to the assessment and collection of taxes for state, county, and township purposes. The law under consideration, however, contains no provision whatever respecting the assessment or collection of the tax complained of, in the sense in which those words are employed in the Constitution. It simply directs the levy of the tax, and in no way regulates the manner in which the proportion of each person is to be ascertained that is assessed; but this, and the method of collecting, is left to be governed by the general revenue law.

"It clearly could not have been intended by the framers of the Constitution to require a general law for the levy of a tax for a special purpose in a county. As in a case of this kind, when no county but that of Ormsby is required to levy a tax, and this for a special purpose, and the amount to be levied is necessarily fixed, how could a general law be enacted to meet the necessities of the case, without requiring all the counties of the state to levy a like tax? It could not, with the construction which counsel for respondent place upon this section.

"We are clearly of the opinion that the constitutional provision simply prohibits special legislation regulating those acts which the assessors and collectors of taxes generally perform, and which are denominated 'assessment' and 'collection of taxes;' and that it does not inhibit the Legislature from authorizing or directing the county commissioners from levying a special tax by the passage of a local law."

The Supreme Court of Alabama, in the case of Sisk v. Cargile, et al., 138 Ala. 164, 35 South. 114, is an illuminating one on the point, and the opinion clearly points out the difference between the act of levying and the

acts of collecting or assessing, and sets forth the distinction between the functions performed by the officials charged with one of these duties from those performed by the officers charged with the other duties.  Se, also, Bacon v. Mulford, 41 N. J. Law, 59.

Some light upon the sense in which the word "assessment" is used in the Constitution is afforded by a reference to the limtiations imposed upon territorial Legislatures by Congress in the matter of local or special laws, and the interpretation of similar language by the territorial Legislature.  The congressional act (Act of July 30, 1886, c. 818, 24 Stat. 170 [U. S'. Comp. St. 1913, § 3479] prohibited the territorial Legislatures from passing local or special laws "for the assessment and collection of taxes for territorial, county, township or road purposes." In 1905, the territorial Legislature enacted chapter 7 (Laws 1905, p. 26; chapter 52, art. 9, Code 1915), which established a public highway through the state to be known as the "Camino Real."  This road was described as running through named counties, beginning at Colfax county· on the northern boundary, and terminating in Doña Ana county on the southern boundary.  The several counties through which the road ran were directed to levy an annual tax, not exceeding one mill on the dollar of taxable property for the purpose of constructing necessary bridges.

The validity of this act, so far as we are advised, was never questioned.

When the state Constitution was adopted, it is to be presumed that the members of the convention and the people were familiar with the claimed power on the part of the legislative department of the territory, under similar language in the congressional act, and with such knowledge re-employed the same language, or similar words, thereby presumptively intending to impose no further restrictions upon the Legislature than were understood from the words as used in the act of Congress.

But resort need not be had to the prior state of the law, as an aid in the construction, for by giving to the word "assessment" its ordinary and generally accepted

meaning it has no application to the levying of a tax, which is all that the law in question does in this regard. The property within Socorro county will be assessed under the general law, and under the general law the taxes will be collected.

Were we to hold otherwise, the construction of state highways, badly needed by the people, would be greatly retarded, and injustice would be done to some sections of the state. If such roads could be constructed only by a general state levy, many counties would be required to contribute to the building of such roads in other counties, for which they would not receive a corresponding benefit.

Appellants cite the following cases, which they claim establish the contrary view: Kimbal v. Rosendale, 42 Wis. 407, 24 Am. Rep. 421; State v. Hazelwood, 158 Wis. 405, 149 N. W. 141; Chicago & N. W. Ry. v. Forest Co., 95 Wis. 80, 70 N. W. 77. That these cases so hold cannot be disputed, but they are contrary to the weight of authority. The Wisconsin cases seemingly were influenced by views which the court entertained as to the prior history of the state and the purpose in view in the enactment of the amendment to the Constitution which prohibited the enactment of special or local laws "for the assessment or collection of taxes."

The case of Board v. State ex rel., 155 Ind. 604, 58 N. E. 1037, is clearly distinguishable from the present case, and the point relied upon was decided in a concurring opinion by only two members of the court.

The point now under consideration was not involved in the California case of People v. Central Pacific R. Co., 83 Cal. 393, 23 Pac. 303. This is clearly shown by the later case of People v. Central Pacific R. Co., 105 Cal. 576, 38 Pac. 905.

The constitutional provision is that the Legislature shall not pass local or special laws:

"Laying out, opening, altering or working roads or highways, except as to state roads extending into more than one county."

Under this constitutional provision, appellants would ap-

parently divide highways into two classes: One, county highways which must be maintained and supported by the people of the county; and, the other, state highways which must be opened, worked and improved at the expense of the state, and for such it is not competent for the Legislature to create a taxing district less in area than the whole state. A brief consideration of the question, however, will demonstrate the fallacy of this argument.

First, it may be stated broadly that all roads laid out under legislative enactment are public highways belonging to the state, under full control of the Legislature. While such control is usually exercised through the instrumentality of local governmental subdivisions of the state, the Legislature may, in the absence of constitutional limitations, directly exercise control of public highways. State ex rel. Board of Com'rs. of County of Hendricks v. Board of Com'rs. of County of Marion, 170 Ind. 595, 85 N. E. 513; Garvin v. Daussman, 114 Ind. 429, 16 N. E. 826, 5 Am. St. Rep. 637; Backus v. Fort St. Union Dept. Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853; Williams v. Eggleston, 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047; O'Connor v. Pittsburg, 18 Pa. 187.

The above being true, then all the public highways within Socorro county are public highways belonging to the state, and over which the Legislature could exercise plenary control, were it not for the constitutional limitations imposed upon it. But this limitation does not change the character of the highways. Those laid out by the local authorities, under the general laws, are no less state highways than are those established by special acts, extending into more than one county. All that the constitutional provisions meant to accomplish was to require the Legislature to provide, by general law, for the laying out, opening, working, and improving highways local in their nature, and not established as a "state road extending into more than one county" by the local authorities. Where a road extends into more than one county and is established as a "state road," the Legislature is given a free hand, and may adopt any means deemed expedient for the opening, working, and improving of the same, not inhibited

by some other constitutional provisions. The mere fact that such a road is declared to be a "state road" does not differentiate it from the other highways of a given county, further than to take it out from under the limitations imposed upon the Legislature as to the necessity of providing for its maintenance and control by general law. All are state highways in the broad sense of the term, and are under legislative control; but in the one case such control can only be exercised under general laws, while in the other special or local laws may be enacted.

The above being true, the question arises as to whether it was competent for the Legislature to create a special taxing district for the improvement of the road in question. As to a highway, or highways not extending into more than one county and declared to be state roads, it is not to be doubted that it would be competent for the Legislature to provide for the creating by local authorities of special taxing district, under a general law, for the improvement of highways, without regard to municipal or political subdivisions of the state, and to authorize the levy of a tax on all prpoerty within such district by uniform rule, according to its value, for the purpose of aiding in the construction of public local improvements. In the case of Gilson v. Board, 128 Ind. 65, 27 N. E. 235, 11 L. R. A. 835, it is said:

"It is not unusual for the Legislature of the several states in the Union, in the exercise of the general power of taxation, as well as in the power of local assessments, to create a special taxing district, without regard to municipal or political subdivisons of the states, and to levy a tax on all property within such district by a uniform rule, according to its value, for the purpose of aiding in the construction of public local improvements."

[4] Further reference to the Indiana case will be made in discussing the next proposition, which is that the act in question violates section 1 of article 8 of the Constitution, which reads as follows:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class."

If we understand appellant's position on this proposition, it is that because the road in question, conceding that it has been legally establishesd, extends into more than one county, and is declared by the act in question to be a state highway, such road is a "state road" and must be constructed and maintained at the expense of the whole state; that it is not competent for the Legislature to levy a tax, for a state purpose, upon the property of only a part of the people of the state. In other words, under our constitutional provision, a tax for a state purpose must be equal and uniform throughout the state; a tax for a county purpose must be equal and uniform throughout the county, etc. And it is contended that this court, in the case of Catron v. Marron, 19 N. M. 200, 142 Pac. 380, held that this state was committed to the policy of the construction and maintenance of a system of highways under the supervision of the state. That it was so stated in that opinion is not subject to dispute, but that case affords no support for appellants.

Appellants say that, if the present law is sustained, a heavier burden is placed upon the taxpayers of Socorro county for a state purpose than is placed upon the taxpayers of other counties, and that this is a clear violation of the rule of uniformity in taxation as declared by this court in the case of Ranch & Cattle Co. v. Board of Equalization, 18 N. M. 531, 139 Pac. 159, and that this tax is attempted to be imposed for a state highway, which is in no sense a local improvement.

These contentions require a consideration of the nature of public highways, and the meaning of the constitutional provision exempting "state roads extending into more than one county" from the inhibition against local or special laws.

In Cooley on Taxation (3d Ed.) p. 238, it is said:

"Taxing districts may be as numerous as the purposes for which taxes are levied. The district for a single highway may not be the same as that for the schoolhouse located upon it. It is not essential that the political districts of the state shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions. A school district may be created of terri-

tory taken from two or more townships or counties, and the benefits of a highway, a levee, or a drain may be so peculiar that justice would require the cost to be levied either upon part of a township or county, or upon parts of several such subdivisions of the state."

In Elliott on Roads and Streets (3d. Ed.) § 475, the author says:

"The Legislature, in the absence of any constitutional provision to the contrary, may provide for taxing districts without regard to the boundaries of counties, townships, or municipalities, as well as by following existing political or municipal lines. Highway improvements may be made by a tax on all the property, real and personal, in the taxing district, or by local assessments against the real estate specially benefited. In other words, it is for the Legislature to determine in general, within constitutional limitations, on what persons and property the cost or expense of constructing and maintaining highways shall fall and the mode of taxation or manner of raising the fund."

In the case of State ex rel. v. Board, 170 Ind. 595, 85 N. E. 513, the Supreme Court of Indiana said:

"All roads laid out under legislative enactment are public highways belonging to the state, under full control of the Legislature. While this control is, as a general rule, exercised through the instrumentality of local governmental subdivisions of the state, the Legislature may, in the absence of constitutional limitations, directly exercise control of public highways."

Many authorities are cited by the court sustaining the doctrine. In the same case the court further said:

"Gravel and macadamized roads and roads built of other material may be constructed and kept in repair by the state, or under state authority by municipal subdivisions of the state, or taxing districts created by the Legislature for that purpose."

In the case of Smith v. Board, etc., 173 Ind. 364, 90 N. E. 881, the court said:

"The doctrine relating to such special taxes proceeds upon the theory that the tax is returned to the person or property paying it, in the form of special benefits received, and hence bonds issued for the construction of such roads do not constitute a debt of the county or township, within the meaning of article 13 of the Constitution, as challenged by appellants

Borrowdale v. Board Co. Com., Socorro Co., 23 N. M. 1.

in the first paragraph of complaint. Board, etc., v. Harrell, supra [147 Ind. 500, 46 N. E. 1241; Board, etc., v. Reeves, supra [148 Ind. 467, 46 N. E., 995].

"What shall constitute the taxing district, and whether it may be confined to, or disregard, boundary lines of counties, townships, or lesser municipalities, are matters wholly within the discretion of the Legislature. It is said in 1 Cooley, Taxation (3d Ed.) 238: "Taxing districts may be as numerous as the purposes for which taxes are levied.    * * * It is not essential that the political divisions of the state shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions.' Gilson v. Board, etc., (1891) 128 Ind. 65, 69 [27 N. E. 235] 11 L. R. A. 835; Board, etc., v. Harrell, supra; Lowe v. Board, etc., (1901) 156 Ind. 163 [59 N. E. 466; Spaulding v. Mott (1909) 167 Ind. 58 [76 N. E. 620]; Elliott, Roads and Sts. (2d Ed.) § 83. The Legislature has not only the power to levy the tax and to authorize the invasion of other governmental jurisdictions, but also the right, in ordinary cases, to declare what shall constitute the taxing district. With respect to this point, Judge Cooley says: 'When the nature of a case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power', and not to be interfered with or controlled except as it may be limited or restrained by constitutional provisions. 1 Cooley, Taxation (3d Ed.) 234. See, also, Byran v. Board, etc., supra [145 Ind. 240, 44 N. E. 357; 33 L. R. A. 476] Board, etc., v. Harrell, supra."

To the same effect, see Railroad Co. v. Commissioners, 48 Ohio St. 249, 27 N. E. 548; Bowles v. State, 37 Ohio St. 35.

In the present case, the Legislature, exercising a power expressly granted by the Constitution, has made provision by a special law, for the laying out, opening, and working of a "state road extending into more than one county," and has determined and prescribed the limits of the taxing district within which the tax shall be laid for the purpose of providing funds for the construction of the road so laid out and established. If the power to authorize. and provide for the creation of a special taxing district for the improvement of a highway, by a general law, under the ordinary constitutional provision, similar to our own, without the exception, be conceded, then it must necessarily follow, where the Constitution expressly gives to the Legislature the power to enact a local and special law for the opening, altering, or working of a state road ex-

tending into more than one county, that the Legislature may determine what shall be the taxing district for the purpose of providing revenue for the improvement of the road.  In other words, if the Legislature could, by a general law, provide for the creation of taxing districts in the several counties, for the improvement of highways, upon petition, election, or otherwise, it can by special or local law because of the exception in the Constitution designate the improvement to be made upon a road, which it establishes as a state road, extending into more than one county, and designate the taxing district which shall bear the burden of such improvement.  As said in the case of Smith v. Board, supra:

"The Legislature has not only the power to levy the tax and to authorize the invasion of other' governmental jurisdictions, but also the right, in ordinary cases, to declare what shall constitute the taxing district."

Here the Legislature has declared that all the property in Socorro county shall be taxed for the improvement of a designated portion of the state road which it has created, and has determined that all the property within such county will be benefited in proportion to tax exacted.

In the case of Board of Com'rs v. Harrell, 147 Ind. 500, 46 N. E. 124, the court sadi:

"For the purpose of making such improvement, the Legislature may levy a tax upon all or a part of the property in such district by a uniform rule according to its value, or may charge the cost thereof to the property in such district according to what is known as the 'front foot' rule, thus determining in advance what preperty is benefited, or it may delegate to a subordinate agency the power to ascertain and report the benefit, if any, to the different tracts of real estate within such district.  In other words, the Legislature may declare that all or a portion of the property within such district is benefited, either according to its value or' in proportion to its actual benefit to be determined by the Legislature itself or by persons selected for the purpose."

In Cooley on Taxation, p. 236, it is said:

"The Legislature judges finally and conclusively upon all questions of policy, as it may also upon all questions of fact which are involved in the determination of a taxing district. And having the authority to determine what shall be the tax-

ing districts, the Legislature must also be left to its own methods of reaching the conclusion."

In the case of Board v. State ex rel., 155 Ind. 604. 58 N. E. 1037, cited by appellants, the court was considering a statute which authorized a change of county seats, and provided, in the event the change was made, that the expense of providing a site and constructing the necessary buildings should be borne by the township in which the new court house and jail were to be erected. In an opinion concurred in by two of the judges, it was said:

"It may be laid down as a general proposition that, under a constitutional limitation like that embodied in article 10, § 1, of the Constitution of this state, requiring uniformity and equalty of taxation, a tax for a state purpose must be uniform and equal throughout the state, a tax for a county purpose must be uniform and equal throughout the county, and a tax for a township purpose must be uniform and equal throughout the township."

Authorities from several states are cited sustaining the principle enunciated. Other authorities, under similar constitutional provisions, sustain the validity of such laws on the ground that the special advantages accruing to the community in which a state institution is located, justify the assessment of a tax upon such community, which presumably is in proportion to the special benefit received. Rankin v. Yoran, Mayor, etc., 72 Or. 224, 143 Pac. 894; Turner v. City of Hattiesburg, 98 Miss. 337, 53 South. 681.

Whether a special assessment could be created for the purpose of levying a tax for the erection, construction, or maintenance of a purely state institution, is aside from the question here under consideration, and the authorities cited by appellant have no application. The law is so well settled, as above shown, that the Legislature may create special taxing districts for the construction of highways, regardless of precinct or county lines, that it is no longer an open question. No authority to the contrary has been cited, and we have found none.

As heretofore suggested in this opiinon, it was not the intention of the framers of the Constitution, and the people in adopting it, to impose upon the state the burden of

providing funds for the construction and improvement of all roads, which the Legislature might declare to be "state roads extending into more than one county," but simply to give the Legislature plenary power over such roads, and their improvement and construction. Slight consideration will demonstrate the object in view. In Cooley on Taxation (3d Ed.) p. 1297, the author says:

"Elsewhere in this work, the public highways have been spoken of as subjects of general concern to the people of the whole state. In a certain sense they are of local concern, because the local organizations construct and support them, but they are constructed for the general benefit and use of all the people, and only turned over to the localities as a matter of apportionment. This being the case, any township, city, or county that neglects its duty in this regard may be compelled by the interference of the state, and on state account to perform it."

For example, suppose under the general law a county would refuse to levy a tax or perform work upon a main road, leading into other counties. Or suppose that one of the counties through which the "Camino Real" extends would refuse to levy a tax for the purpose of improving that portion of the road within its boundaries, and the constitutional exemption as to state roads extending into more than one county did not exist, the whole scheme of good main thoroughfares might be effectually blocked by such neglect on the part of one county. Under the exception in the Constitution, the Legislature could compel such county to perform its duty, and could under a special law levy the necessary tax and provide for the improvement of such road. Such, we believe, was the purpose of the exception. Were we to accept appellant's view of the law and hold that the doctrine announced in the case of Board v. State ex rel., supra, applied to highways extending into more than one county, the result would be that special assessment districts could not be created for the improvement of streets within a city. Streets and highways within a city are certainly for the benefit of all the inhabitants within the city and their improvement and repair are city purposes. If a tax could not be laid upon the property especially benefited for the purpose of paying for the improvement, then all the property within the limits

of the city would necessarily be required to be assessed for all street and sidewalk improvements made. It is universally held, we believe, that a city may pay for the cost of street improvements out of the funds raised by general taxation upon all the property within the city; but it is likewise also generally held that special assessment districts may be created for the purpose of making such improvements.

We do not mean to be understood as holding that it would not be competent for the Legislature to provide for the improvement of such state roads at the expense of all the property of the state, for such is not the case. All or part of such expense may be paid for by the state, or, as in the present, a special taxing district may be created and a tax levied upon all the property therein for the purpose of providing funds for such purpose.

[5] What has been said disposes of appellants' last contention, that the act is in violation of article 9, § 10, of the Constitution, which prohibits counties from borrowing money until after the proposition to create such debt shall have been submitted to the qualified electors of the county who have paid a property tax therein during the preceding year, and approved by a majority of those voting thereon. If the Legislature lawfully created a special taxing district, embracing the territory comprised within the boundaries of Socorro county, for the purpose of raising funds for the improvement of the road in question, then the anticipation of the revenue raised by such tax, under the authority of the act in question, would not be the creation of a debt against Socorro county, but would simply be a debt for the taxpayers within such district, and, as required by the law under consideration, would be repaid out of the proceeds of the special tax. In the case of Board of Commissioners v. Harrel et al., 147 Ind. 500, 46 N. E. 124, a township had voted bonds for the construction of a free gravel road, under a law so authorizing. The contention was made that the township, being already indebted to its constitutional limit, could not legally incur further indebtedness, and that the bonds were void. The court said:

"The special tax levied by the board of [county] commissioners upon all the property of the taxing district is not an indebtedness of the township or townships composing such taxing district, but is an indebtedness of the taxpayers, secured by a lien on their property, and for which only their property is liable; and is no more to be counted in ascertaining the indebtedness of a township than the individual indebtedness of the inhabitants of the county."

See. also, Smith v. Board, 173 Ind. 364, 90 N. E. 881; Board v. Reeves, 148 Ind. 467, 46 N. E. 995.

Such being the case, the act in question is not violative of article 9, § 10, of the Constitution.

Finding no error in the record, the judgment of the trial court will be affirmed, and it is so ordered.

PARKER, J., concurs.


HANNA, J. (dissenting). The first question considered in the majority opinion is whether or not the act in question is a law for the laying out, opening, altering, or working of a state highway extending into more than one county, and therefore without the constitutional inhibition against local or special legislation. The act (chapter 23, Laws 1915) creates a "state highway between Hondo post office in Lincoln county, and Mogollon in Socorro county." It directs the board of county commissioners of Socorro county to cause to be made a levy of not exceeding two mills for the purpose of providing funds for the working and construction "of that portion of the said state highway which lies between the city of Socorro and the town of Mogollon in said county." After providing that the proceeds of the levies shall be expended by the board of county commissioners upon that part of the said highway between the city of Socorro and the town of Mogollon in Socorro county, other minor provisions are made which I do not deem it necessary to consider at this time. The infirmity of the act lies in the fact that while the road is declared to be a state highway, no provision is made for working or laying out the same other than within the county of Socorro, and it would seem that the constitutional inhibition was sought to be avoided by a mere declaration of the Legislature that the road was a

state highway, when in truth and in fact it was nothing more nor less than a county road between two points in Socorro county, thus attempting to do by indirection what clearly could not be done directly.

While fully appreciating the reluctance with which courts declare legislative acts unconstitutional, it is my opinion that there can be little or no safeguard in constitutional prohibition against legislation of this character, if this court permit a declaration by the Legislature to set aside the apparent purposes and declarations of the act itself, to be ascertained by an examination of the act as a whole. The act is clearly inconsistent with its avowed purpose as stated in the enacting clause, and the actual purpose as set out in the body of the act, and it is my opinion that the latter should control.

The next point considered is whether the act is a local or special act regulating county affairs, in that it attempts to vest in the board of county commissioners special authority and supervision of the proposed highway and its construction. This question, like the first question considered, depends upon whether or not the declaration of the Legislature that the road is a state highway is to be a controlling factor in our consideration of the constitutionality of the act; and all that I have had to say upon the first question would apply to a consideration of this question, and be determinative thereof.

Not desiring to lengthen this opinion, I will briefly consider the question raised by appellants concerning the constitutionality of the act under consideration in light of the inhibition against local or special legislation in the assessment or collection of taxes. The majority opinion supports the act and finds authority for the view that inhibition against the assessment or collection of taxes does not conflict with a levy of taxes. I cannot agree with this view of the matter, as I hold that the levy of taxes must necessarily include both the assessment and collection of the same, and I therefore agree with the holdings of the Wisconsin Supreme Court in its interpretation of a constitutional provision similar to ours; that court in this connection saying:

"The sense and meaning of the constitutional prohibition is as broad as the language of the statute, and extends to all the various proceedings required to be taken 'to raise' money by taxation. It forbids the enactment of special laws touching the entire subject and method of taxation. Chicago & Northwestern R. Co. v. Forest County et al., 95 Wis. 80, 86, 70 N. W. 77, 78.

See, also, Kimbal v. Town of Rosendale, 42 Wis. 407, 24 Am. Rep. 421; State ex rel. Merrimac v. Haezlwood, 158 Wis. 405, 149 N. W. 141.

I believe much might be said upon the subject of the constitutional inhibition against local or special legislation regulating county affairs. It would seem that the act in question imposes an additional tax upon the taxpayers of Socorro county not shared by the taxpayers of other counties for the support of what is declared to be a state highway. If in point of fact, as seems to be clear to my mind, the road is not a state highway, but a county highway, then the Legislature has attempted to regulate the affairs of Socorro county in the matter, and has passed local legislation providing for the levy of a tax for what is strictly a county purpose. If the road is to be considered a state highway, then a heavier burden has been placed upon the taxpayers of Socorro county for a state purpose than has been imposed upon the taxpayers of other counties, which is clearly a violation of the rule concerning uniformity in taxation.

For the reasons pointed out, and owing to the importance of the question involved, I am constrained to dissent from the majority opinion.