Gilson *et al. v.* The Board of Commissioners of Rush County.

Filed April 9, 1891.

No. 15,785.

GILSON ET AL. *v.* THE BOARD OF COMMISSIONERS OF RUSH COUNTY.

CONSTITUTIONAL LAW.— *Uniformity of Statute.—Local or Special Legislation.* —A statute which is of general and uniform operation throughout the State, and operates alike upon all persons, under the same circumstances, is not subject to the objection that it is special or local legislation.

SAME.— *Uniformity in Taxing District.*—If a tax law provides that the rate of assessment and taxation shall be uniform and equal throughout the locality in which the tax is to be levied, it does not violate the section of the Constitution requiring that a tax law shall provide for a uniform and equal rate of assessment and taxation.

FREE GRAVEL ROAD.—*Act of 1889 for Purchase of Road is Valid.*—The act of March 8, 1889 (Acts 1889, p. 276), providing for the purchase of toll roads is constitutional, and does not violate either section 22, article 4, or section 1, article 10, of the Constitution.

SAME.— *Majority of Votes Cast Gives Authority to Purchase.*—If the requisite number of freeholders, citizens of two or more townships, jointly petition the board of county commissioners for an election to determine if a certain designated toll road shall be purchased and made a free road, and an election is ordered and held pursuant to the request of such petition, such townships thus petitioning constitute an election district; and if a majority of all the votes cast in such district is in favor of such purchase, the purchase must be made, although a majority in one or more of the townships is against it.

SAME.—*Exemption of Realty from Taxation.— Validity of Statute.*—The provision in the statute exempting from taxation real estate previously assessed for free gravel roads, until other property has paid an amount equal to such assessments, does not render the statute void.

SAME.—*Objections to Proceedings.— When to be Made.*—Objections to the petition for an election, notice thereof, appraisement of the road, and regu-

larity of the election must be made before the final order for the purchase of the road is entered by the board of county commissioners.

STATUTE.—*Object in Construing.*—*Isolated Words or Sentences.*—The object to be attained in construing a statute is to ascertain the intention of the Legislature which passed it, which intention is to be ascertained by looking to the whole statute, and not in the consideration of isolated words, or sentences.

From the Rush Circuit Court.

*J. H. Mellett* and *M. E. Forkner,* for appellants.

*J. Q. Thomas, K. M. Hord* and *E. K. Adams,* for appellee.

COFFEY, J.—By an act of the General Assembly, approved March 8, 1889 (Acts of 1889, p. 276), it is provided that the county commissioners of any county in this State, when petitioned therefor by fifty freeholders, citizens of any township, or townships, in the county, where a toll-road is located, shall submit to the voters of said township, or townships, in such county through which said road may pass, at a regular or special election, giving at least twenty days' notice in a newspaper of general circulation published in said county, and by posting up written or printed notices thereof at each voting place in said township, or townships, the question of purchasing turnpikes, or toll-roads, in said township, or townships. The vote on such question is required to be certified by the proper officers of election to the county commissioners, and, if a majority of the votes at such election is in favor of the purchase, it is made the duty of such board to purchase such toll-road. Before such election is held it is the duty of the board of commissioners to appoint a surveyor, or engineer, of the county, and two disinterested freeholders of the county, one of such freeholders to be selected by the board, and the other by the company owning the road, to view the road to be purchased, and determine the consideration to be paid for the same. It is further required that the consideration to be paid shall be published as a part of the notice of election.

Upon the order for the purchase of such toll-road, or a

section thereof, being made by the board of commissioners, the company owning such road is required to execute and deliver to such board a written deed, under the seal of the company, conveying to the board the road, or section thereof, described in the petition, including the bridges on the line thereof, and thereupon the board of commissioners may issue to such company the bonds of the county, payable in instalments, or at annual intervals, not exceeding, in all, the period of five years, bearing interest at a rate not exceeding six per cent., payable annually.

For the purpose of raising money necessary to meet said bonds, and the interest thereon, the board of commissioners is required to levy an annual tax upon the property of the township, or townships, voting for such purchase, in such manner as to meet the principal and interest of said bonds. If the road, or section thereof, purchased, runs into, or through, two or more townships, the amount paid therefor is to be divided and charged upon the property in such townships in proportion to the assessed value thereof purchased in each township.

Lands which have been previously assessed for the construction of free gravel roads are exempt from taxation under the provisions of this act until all other lands in the township shall have been assessed an amount equal to the assessment made under the act for the purchase of toll-roads.

Toll-roads purchased under this act are made free, and are to be kept in repair as roads constructed under the free gravel-road laws of the State.

Under the provisions of this statute fifty freeholders of the townships of Center, Jackson, and Rushville, in Rush county, in the month of December, 1889, filed in the office of the auditor of said county a petition signed by them, praying the board of commissioners of said county to submit to the voters of said townships, at a special election, the question of purchasing a certain toll-road extending through said townships, from the city of Rushville, in said county, to the

town of Knightstown, in Henry county, known as the Rushville, Raysville, and Knightstown Gravel Road.

Such proceedings were had under this petition that the road was appraised, the election was ordered, notice thereof given, the election held, and a return thereof made to the Board of Commissioners of Rush county. The board determined that a majority of the votes cast at such election was in favor of the purchase of the road, and thereupon entered an order to purchase the same, took a conveyance thereof from the company owning it, and issued to the company the bonds of Rush county in payment therefor. A majority of the votes cast in Center township was against the purchase, but a majority of all the votes cast in the three townships voting at such election was in favor of purchasing the road. The amount to be paid for the road was apportioned among the three townships as follows : Center township, $4,439.60 ; Jackson township, $2,632.98 ; and Rushville township, $849.25.

This action was commenced by the appellants, who are resident freeholders and tax-payers of Center township, in the county, to enjoin the board of commissioners from levying a tax to meet the principal and interest of the bonds issued by Rush county, in payment for the toll-road so purchased pursuant to the prayer of the petition above referred to. The court sustained a demurrer to the complaint, and this ruling is called in question here by a proper assignment of error.

The first contention of the appellants is, that the act of the General Assembly under which the appellee assumed to purchase the toll-road in question is void, as being in conflict with section 22, article 4, and section 1, article 10, of our State Constitution.

So much of section 22, article 4, as is material to the controversy here, reads as follows : " The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say : For the assessment and

collection of taxes for State, county, township, or road purposes."

Section 1, article 10, is as follows: "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

It is held that a statute which is of general and uniform operation throughout the State, and operates alike upon all persons, under the same circumstances, is not subject to the objection that it is special or local legislation. *State, ex rel.,* v. *Reitz,* 62 Ind. 159 ; *McLaughlin* v. *Citizens, etc., Ass'n,* 62 Ind. 264; *Heanley* v. *State,* 74 Ind. 99 ; *Elder* v. *State,* 96 Ind. 162.

The statute we are now considering is of uniform operation throughout the State of Indiana, and applies alike to all persons coming within its operation, and is not in conflict with the provisions of section 22, article 4, of our State Constitution.

The question as to whether it is in conflict with section 1, article 10, above quoted, is a much more serious question. This provision of our Constitution received a construction in the case of *Bright* v. *McCullough,* 27 Ind. 223. It was said in that case : "The section does not require that the rate of assessment shall be uniform and equal for all purposes throughout the State; and we think its meaning clearly is, that the rate of assessment and taxation must be uniform and equal throughout the locality in which the tax is levied."

So, again, it received a construction in the case of *Lafayette, etc., R. R. Co.* v. *Geiger,* 34 Ind. 185. That was a suit to enjoin the levy and collection of a tax in aid of the construction of a railroad. It was contended that inasmuch as the railroad ran through the counties of Madison, Tipton,

Clinton, Tippecanoe, and Benton, in this State, it was necessary that each and all of the counties must vote for an appropriation, and assess the same amount of tax in each county to make it uniform and equal. In answer to this contention the court said : " If the tax assessed is equal and uniform in the county where assessed, it will be in strict accordance with the requirements of the Constitution." See, also, *John* v. *Cincinnati, etc., R. R. Co.*, 35 Ind. 539.

It is not unusual for the Legislatures of the several States in the Union, in the exercise of the general power of taxation, as well as in the power of local assessments, to create a special taxing district, without regard to municipal or political subdivisions of the States, and to levy a tax on all property within such district by a uniform rule, according to its value, for the purpose of aiding in the construction of public local improvements.

Our laws providing for street improvements, for the construction of free gravel roads, for the construction of ditches and drains, and for aid in the construction of railroads, are examples of this kind of legislation.

True, in most cases, such improvements are paid for by local assessments against real property, which, in theory, is benefited to an amount equal to the assessment. But it is by no means universally true that such improvements are paid for by assessments against real estate supposed to be benefited ; but, on the contrary, they are often paid for by the assessment of a tax on all property found within the taxing district. The doctrine announced in *Bright* v. *McCullough, supra,* that the requirements of section 1, article 10, are fulfilled when the rate of assessment and taxation is uniform and equal throughout the taxing locality, has often been affirmed by this court. *Palmer* v. *Stumph,* 29 Ind. 329; *Anderson* v. *Kerns Draining Co.,* 14 Ind. 199 ; *Goodrich* v. *Winchester, etc., T. P. Co.,* 26 Ind. 119.

In the case of *Bowles* v. *State,* 37 Ohio St. 35, the question now under consideration was discussed at some length

by the Ohio court. The case involved the constitutionality of a statute passed by the General Assembly of that State authorizing the assessment of all property, both real and personal, within a given district, to pay for the construction of a free turnpike road.

It was contended that the Legislature had no power to create a taxing district without regard to the boundaries of the political, or municipal, subdivisions of the State, and in answer to this objection the court said : " That the power is not expressly inhibited is clear, and we are persuaded that there is no implication against it, from the fact that it has always been exercised without challenge in divers ways for the purpose of promoting local advantages, not only in the exercise of the power of local assessments, where the burden of local improvements has been placed upon property specially benefited, and in proportion to the benefits, but by general taxation upon local districts other than municipal or political subdivisions. Notably, special taxing districts have been created for the purpose of supporting and maintaining schools and highways by the subdivisions of townships ; and we can see no difference in principle between such legislation and the statute under consideration."

These several adjudications seem to be in exact accord with the elementary books upon the same subject : Cooley Taxation (Ed. 1876), p. 113 ; see, also, pp. 110, 111, 112 ; Elliott Roads and Streets, 392, 393.

Judge Cooley, at page 113, in discussing this question, says : " Taxing districts may be as numerous as the purposes for which taxes are levied. The district for a single highway may not be the same as that for the school-house located upon it. It is not essential that the political districts of the State shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions. A school district may be created of territory taken from two or more townships or counties, and the benefits of a highway, a levee

or drain may be so peculiar that justice would require the cost to be levied either upon part of a township or county, or upon parts of several such subdivisions of the State. The political subdivisions of the State are necessarily regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity, so that, as already stated, the nature of the tax will determine the district."

Many authorities are to be found to the same effect, among which are *People* v. *Central Pacific R. R. Co.*, 43 Cal. 398; *County Judge* v. *Shelby R. R. Co.*, 5 Bush, 225; *Challiss* v. *Parker*, 11 Kan. 394; *People, ex rel.*, v. *Draper*, 15 N. Y. 532; *Buffalo, etc., R. R. Co.* v. *Board, etc.*, 48 N. Y. 93; *Litchfield* v. *McComber*, 42 Barb. 288; *Sangamon, etc., R. R. Co.* v. *County of Morgan*, 14 Ill. 163; *Bakewell* v. *Police Jury*, 20 La. Ann. 334; *Inhabitants of Norwich* v. *County Commissioners*, 13 Pick. 60; *Inhabitants of Brighton* v. *Wilkinson*, 2 Allen, 27; *Salem Turnpike* v. *County of Essex*, 100 Mass. 282; *Missouri River, etc., R. R. Co.* v. *Morris*, 7 Kan. 210.

In the passage of the statute under examination the Legislature took into consideration that those living in the immediate vicinity of a toll-road had a special interest in having it made free, and that they would reap an advantage therefrom not enjoyed by those residing in a remote part of the county; and hence it imposed upon those who thus received a special benefit the burden of paying for the same in the event they desired to purchase such road, and make it free. There can be no difference in principle between taxation to construct a free gravel road, and taxation to purchase a toll-road already constructed, and make it free to all. The mode usually employed to raise funds with which to construct free gravel roads is by assessments on real estate supposed to be benefited; but that mode is pursued simply because the Legislature has seen fit to declare it a proper one.

We can not say that a person who possesses personal property only, may not be benefited by the construction of a

free gravel-road, or by the purchase of a toll-road to become free, in an amount equal to the taxes paid by him for that purpose. Judge Elliot, in his work on Roads and Streets, p. 393, says : " The weight of authority * * is overwhelmingly in favor of the right of the Legislature to determine what property shall be assessed and how the apportionment shall be made."

In this statute the Legislature, in the exercise of that right, has determined that both real and personal property shall be taxed, and that it shall be apportioned among the several townships through which the toll-road runs, if they by proper vote determine to purchase such road.

This statute not only provides for taxing districts, but it divides such districts into two classes, namely :

*First.* Districts composed of a single township, where it determines to purchase a toll-road, or a part of a toll-road, within its limits ; and,

*Second.* A district composed of two or more townships where they jointly determine, by a proper vote, to purchase a toll-road, or part of a toll-road, running into or through all the townships voting for such purchase.

This case falls within the second class, and if a majority of the votes cast in that district was in favor of purchasing the toll-road mentioned in the complaint, it was the duty of the board of commissioners of Rush county to make such purchase. The contention that the other townships had no power to vote a tax upon Center township without its consent, is not tenable, for the reason that Center township elected to become a part of the taxing district by signing the petition praying the board of commissioners to make a purchase of the toll-road, in the manner prescribed by law. Had there been no freeholders found in Center township to sign the petition, then it would have been impossible to vote a tax on the property of that township with which to purchase the toll-road ; but when its freeholders saw fit to join with the other two townships in a petition to purchase the

road, we think it became a part of the taxing district, and took its chances on the result of the vote upon the question submitted.

The only object to be attained in construing a statute is to ascertain the intention of the Legislature which passed it, and such intention is to be ascertained by looking to the whole statute, and not in the consideration of isolated words, or sentences. In our opinion, it was the intention of the Legislature, in passing the act under consideration, that where two or more townships joined in a petition to the board of county commissioners to purchase a particular toll-road, all the townships joining in such petition should be taxed to pay for the same, in the event a majority of the votes cast was in favor of such purchase, though there may have been a failure to obtain a majority in one of the townships. Where the townships have joined in such petition, and the vote is in favor of the purchase, the townships thus voting may well be said to have voted in favor of such purchase. The result of holding otherwise might be that two townships would purchase the two ends of a toll-road, while a majority of one vote in a township between the two would defeat the purchase of the center, and thus destroy the value of the road as a free thoroughfare. We do not think it was the intention of the Legislature to permit such a result. The contention that the elections, in all cases under this law, are to be several, is destroyed by the provision made for a joint petition. Had it been the intention of the Legislature that the purchase should depend on the result of the election in each township, it is reasonable to assume that the Legislature would have provided for several petitions and several elections, and would have made no provision for joint petitions and a joint election.

The provision of the statute that each township through which the road passes shall pay the appraised value of that part of the road located in the township is not objectionable. It proceeds upon the assumption that the citizens of that town-

ship will receive a special benefit, by making the toll-road free, equal to the amount paid by them for that purpose. As we have seen, the question of apportionment was one for the Legislature, and unless it affirmatively appears that the Legislature has so far abused its discretion as to take private property for public use without compensation, the courts have no power to interfere. Nothing of the kind appears in this case.

Nor do we think the provision in the statute exempting from taxation real estate previously assessed for free gravel roads, until other property has paid an amount equal to such assessments, renders the statute void. It does not appear that there is any such real estate in any of the townships to be taxed for the purchase of the toll-road in question.

Indeed, we can not know that any case will ever arise in which this provision will have any application.

In the case of *Bowles* v. *State, supra,* this objection was urged against the statute then under consideration, and in answer to this objection it was said by the court: " Inasmuch, therefore, as the statute under consideration may have a constitutional operation, must it be declared absolutely void, because, under certain circumstances, which may or may not exist, the operation of the statute would violate the principle of uniformity required by the Constitution as an essential rule in the imposition of taxes? We think not."

It is unnecessary to inquire now what would be the effect of this provision should a case arise to which it is applicable. It is sufficient to say that no such case is before us, and that anything we might say upon the subject would be mere *dicta.*

In our opinion, the statute before us is not subject to any of the constitutional objections urged against it, and is a valid enactment.

Numerous objections are urged against the petition, the manner in which the consideration to be paid for the toll-road was ascertained, and to the notice of election.

In our opinion, these objections come too late. The statute before us confers upon the board of commissioners of the county exclusive original jurisdiction to receive and pass upon the sufficiency of the petition, the sufficiency of the report made by the persons appointed to ascertain the consideration to be paid for toll-roads, the sufficiency of the notice of election, and the result of the election. In passing upon these questions the board of commissioners acts in a judicial capacity. These matters must all be passed upon by the board before the order for the purchase of the road is entered. When the order for the purchase of the road is made these questions are, therefore, conclusively adjudicated.

Objections to the petition, notice, appraisement, or regularity of the election must be made, if made at all, before the final order for the purchase of the road is entered by the board of commissioners. *Jackson* v. *State*, 104 Ind. 516; *Peters* v. *Griffee*, 108 Ind. 121; *McMullen* v. *State*, 105 Ind. 334; *Young* v. *Sellers*, 106 Ind. 101; *Million* v. *Board, etc.*, 89 Ind. 5; *Dewey* v. *State*, 91 Ind. 173; *Stoddard* v. *Johnson*, 75 Ind. 20; *Osborn* v. *Sutton*, 108 Ind. 443; *Ely* v. *Board, etc.*, 112 Ind. 361; *White* v. *Fleming*, 114 Ind. 560; *Strieb* v. *Cox*, 111 Ind. 299; *Black* v. *Thompson*, 107 Ind. 162; *Hobbs* v. *Board, etc.*, 116 Ind 376; *Board, etc.*, v. *Hall*, 70 Ind. 469; *Reynolds* v. *Faris*, 80 Ind. 14; *Hilton* v. *Mason*, 92 Ind. 157; *Hill* v. *Probst, etc.*, 120 Ind. 528; *Loesnitz* v. *Seelinger*, 127 Ind. 422.

Under the authorities above cited it must be held that the questions involving the sufficiency of the petition, the regularity of the report of those appointed to appraise the road, the sufficiency of the notice of the election, and the regularity and result of such election, are questions which were adjudicated by the board of commissioners of Rush county before entering an order for the purchase of the toll-road named in the complaint, and, having been so adjudicated by that tribunal, they are not subject to investigation in a collateral proceeding like this.

We have carefully examined all the other questions presented by the record, and feel warranted in saying that the court did not err in sustaining the demurrer to the complaint in this cause.

Judgment affirmed.

