Monks, J.
This appeal was taken from an interlocutory order restraining appellant from letting a contract to construct a free gravel road in Clear Creek *500 township, Monroe county, under the provisions of the act of 1893 (Acts 1893, p. 196), sections 6924-6934, Burns’ R. S. 1894, as amended by the act of 1895 (Acts 1895, p. 143).
The injunction was asked upon two grounds:
First, That appellant had no right or authority in law to call an election to vote on the two roads in question for the reason that there was a single petition filed before the board to build three free gravel roads iu Clear Creek township, each road being distinct from the others.
Section 2 of the act of 1893, as amended by the act of 1895, under which the proceeding to build said gravel roads was brought, expressly authorizes the petitioners to include in a single petition one or more roads or parts of roads, each of which is disconnected from the other, and provides that all of said roads or parts of roads shall be voted on as a unit. (Acts 1895, p. 145, section 2.)
Section 10, as amended by the act of 1895 (Acts 1895, p. 147), authorizes the commissioners to permit the petition to be amended. Under these sections the petition for these roads could be amended so as to ask for two or only one of said roads, and the order of the board for an election upon a petition so amended would be valid.
If the board of commissioners made an order for an election on only a part of the roads described in the petition this, if an error, would be one of which no one but the petitioners could complain. If they acquiesced in such an order by not taking proper steps to correct the same, the petition would be considered as amended by the petitioners so as to conform to such order.
The act of the board of commissioners in ordering said election for only two roads, even if erroneous, was not void and not, therefore, subject to collateral *501 attack, as was attempted by this proceeding. Porter v. Stout, 73 Ind. 3, 5; Stoddard v. Johnson, 75 Ind. 20, 30; Million v. Board, etc., 89 Ind. 5, 13; Strieb v. Cox, 111 Ind. 299, 304; Chicago, etc., R. W. Co. v. Sutton, 130 Ind. 405, 410; Cason v. Harrison, 135 Ind. 330, 333; Perkins v. Hayward, 132 Ind. 95, 104; McCoy v. Able, 131 Ind. 417; Jones v. Cullen, 142 Ind. 335; Gilson v. Board, etc., 128 Ind. 65.
The second ground upon which the injunction was asked, and the one upon which the court below granted the same, was that “The letting of the contract and issuing the bonds to construct said free gravel roads would create an indebtedness of Clear Creek township in excess of two per cent, of the assessed value of the property of said township, which is prohibited by article 13 of the constitution.” Said article reads as follows:
“No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: Provided, That in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense to such an amount as may be requested in such petition.”
Section 5 of the act of 1893, as amended by the act of 1895 (Acts 1895, p. 146), provides that “For the purpose of raising money to pay for such construction, *502 the board of commissioners shall issue the bonds of the county for the full amount of the contract, in denominations of not less than fifty dollars each. * * * The county treasurer shall sell bonds at not less than their face value, and the proceeds shall be kept as a separate and specific fund to pay for the construction of the particular road or roads for which they were issued, and shall be paid by him to the contractor upon the warrant of the auditor as directed by the board of commissioners.”
Section 6 of said act, as amended (Acts 1895, p. 146), provides that “For the purpose of raising money necessary to meet said bonds and interest thereof, the' board of commissioners shall annually thereafter, at the time the general tax levy is made, levy a special tax upon the property of the township or townships,3 including the towns and cities, if any there be, of less than thirty thousand inhabitants, in such manner as to meet the principal and interest of said bonds as they shall become due, and such taxes shall be collected as other taxes, and shall be applied to the payment of such bonds and interest. If the road or section thereof so constructed runs into or through two or more townships, the amount paid thereof shall be divided and charged upon the property of each township, in the same ratio that the assessed valuation of all the property in each township bears to the assessed valuation of all the property in all the townships through which the road or roads run, and said special tax be levied accordingly.”
The power of the legislature in matters of taxation is unlimited except as restricted by the constitution. The legislature, in the exercise of this power in making local improvements, may create a special taxing district without regard to the boundaries of counties, *503 townships or municipalities. Gilson v. Board,etc., supra.
Judge Cooley, in his work on “Taxation,” at p. 113, says, concerning this question: “Taxing districts may be as numerous as the purposes for which taxes are levied. * * * It is not essential that the political districts of the state shall be the same as the taxing-districts, but special districts may be established for special purposes, wholly ignoring the political divisions. * * * The political divisions of the state are necessarily regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity, so that, as already stated, the nature of the tax will determine the district.”
A tax or assessment for. local improvements is based npon the theory that it is a return for the benefit received by the person who pays the tax or by the property assessed.
For the purpose of making such improvement, the legislature may levy a tax upon all or a part of the property in such district by a uniform rule according to its value, or may charge the cost thereof to the property in such district according to what is known as the “front foot” rule, thus determining in advance what property is benefited, or it may delegate to a subordinate agency the power to ascertain and report the benefit, if any, to the different tracts of real estate within such district. In other words, the legislature may declare that all or a portion of the property within such district is benefited, either according to its value or in proportion to its actual benefit to be determined by the legislature itself or by persons selected for that purpose. Gilson v. Board, etc., supra.
The legislature, by the act of 1893, as amended by the act of 1895, for the purpose of apportioning the *504 benefits for the construction of a road or roads, under said law determined in advance what property would be benefited by requiring that the districts should be composed of the township or townships into or through which the proposed roads run, and that all the property in said taxing district would be benefited according to its value.
The provisions of the act of 1889 (Acts 1889, p. 276), for the purchase of free gravel roads in respect to the taxing districts and the property benefited, are substantially the same as those of the statute under consideration, and this court, in Gilson v. Board, etc., supra, said, concerning the taxing districts and benefits under that law: “In the passage of the statute under examination the legislature took into consideration that those living in the immediate vicinity of a toll road had a special interest in having it 'made free, and that they would reap an advantage therefrom not enjoyed by those residing in a remote part of the county; and hence it imposed upon those who thus received a special benefit the burden of paying for the same in the event they desired to purchase such road, and make it free. There can be no difference in principle between taxation to construct a free gravel road, and taxation to purchase a toll road already constructed, and make it free to all. The mode usually employed to raise funds with which to construct free gravel roads is by assessment on real estate supposed to be benefited; but that mode is pursued simply because the legislature has seen fit to declare it a proper one. We cannot say that a person who possesses personal property only, may not be benefited by the construction of a free gravel road, or by the purchase of a toll road to become free, in an amount equal to the taxes paid by him for that purpose. Judge Elliott, in his work on Boads and Streets, p. 393, says: ‘The *505 weight of authority * * * is overwhelmingly in favor of the right of the legislature to determine what property shall be assessed and how the apportionment shall be made.’ ”
What was said in that case applies with equal force to the law under consideration.
It is clear, therefore, that the special tax to be paid under said law is an assessment of benefits to the persons and property taxed by the legislature in the exercise of its sovereign power of taxation.
The bonds issued by the board of commissionsers, under the law in controversy, are not payable out of the general fund of the county or township, but are payable out of a particular fund, to be raised by a special tax being imposed as a benefit, assessed according to its value, not upon all the taxable property in the county, but upon all the taxable property in the taxing district. The money thus raised according to the benefits declared by the legislature cannot be applied to any other purpose except to pay the bonds and interest, and the money realized by the sale of said bonds can only be used to build said roads. No other provision is made for the payment of said bonds except from the fund raised by said special assessment, and the same is pledged by the statute for that purpose, and cannot be devoted to any other purpose.
The provisions of said act of 1893, as amended by the act of 1895, are in legal effect the same as those of the act of 1877 and the amendments thereto, concerning the issuing and payment of bonds to construct free gravel roads. In the case of Strieb v. Cox, supra, this court held that bonds issued under said act of 1877 and the amendments thereto, sections 6855-6867, Burns’ R. S. 1894 (5091-5103, R. S. 1881), for the construction of free gravel roads, did not constitute an indebtedness of the county within the meaning of *506 article 13 of the constitution. The same doctrine has been declared in other cases. Burton v. State, 111 Ind. 600; Board, etc., v. Fullen, 111 Ind. 110; Board, etc., v. Hill, 115 Ind. 316; Board, etc., v. Fullen, 118 Ind. 158; Board, etc., v. Fahlor, 114 Ind. 176; Spidell v. Johnson, 128 Ind. 235; Gavin v. Board, etc., 101 Ind. 201; Little v. Board, etc., 7 Ind. App. 118; Walker v. Board, etc., 11 Ind. App. 285; Braun v. Board, etc., 70 Fed. 369.
While it is true that the bonds are not county obligations in the sense that they constitute an indebtedness against the county, yet the law under which they are issued binds the county to levy, collect, and apply the special tax to the payment of the bonds and interest. The bonds are secured by the special tax and the fund derived from the special tax is pledged to their payment. The holders of the bonds have a remedy which can be invoked if any county officer attempts to divert the funds or in any other respect to violate his duty. Spidell v. Johnson, supra.
Do such bonds constitute an indebtedness of the township or townships within which the road or roads are built, within the inhibition of article 13 of the constitution? A debt in its general sense is a specific-sum of money which is due or owing from one person to another, and denotes not only an obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. City of LaPorte v. Gamewell Fire Alarm, etc., Co., 116 Ind. 166; Quill v. City of Indianapolis, 121 Ind. 292, 299.
The mere fact that the boundaries of the taxing district and the township are the same, and that the property within those boundaries is liable to be assessed with benefits according to its value-, does not make the bonds a debt of the township. The township is a corporation with the power of making con *507 tracts, and is represented by an officer, but the taxing district as such is not authorized and has no power to create any indebtedness against the township as a political subdivision of the State.
The property in the township upon which the special tax is levied, the legislature has declared is benefited to the extent of such tax, but the township as a corporation is not benefited by the improvement, and is, therefore, under no legal or moral obligation to pay the bonds.
The townships as political subdivisions have nothing to do with the execution or payment of the bonds, and no duty is imposed upon them by the law as to the collection or disbursement of the- special tax to pay said bonds and interest.
It is clear that the holder of such bonds could not recover any judgment thereon against the township or townships in which said roads were built, or in any way hold them liable therefor.
It is well settled that obligations payable out of a particular fund and for which the fund only and not the township is liable, are not within the inhibition of the constitution. City of LaPorte v. Gamewell Fire Alarm, etc., Co., supra, and cases cited.
The special tax levied by the board of commissioners upon all the property of the taxing district is not an indebtedness of the township or townships composing such taxing district, but is an indebtedness of the taxpayers, secured by a lien on their property, and for which only their property is liable; and is no more to be counted in ascertaining the indebtedness of a township than the individual indebtedness of the inhabitants of the township.
The constitutional inhibition is a limit on the power to become indebted, and does not apply in any way to *508 taxes and assessments upon property for the benefit thereto of a public improvement.
It is clear, we think, that the contract to construct said roads and issuing the bonds for that purpose will not create any indebtedness against Clear Creek township.
The order granting the temporary injunction is, therefore, reversed.