## WALGREEN CO. *v.* GROSS INCOME TAX DIVISION

[No. 28,284.   Filed December 5, 1947.]

*Symmes, Fleming & Symmes,* of Indianapolis, for appellant.

*Cleon H. Foust,* Attorney General, *Kelso Elliott, John J. McShane, John H. Fetterhoff* and *Lloyd C. Hutchinson,* Deputy Attorneys General, for appellee.

GILKISON, J.—The appellant, as plaintiff, brought suit in the lower court to recover certain, sums charged

against it by appellee as gross income taxes and paid by appellant under protest. From a judgment against it thereon this appeal is taken. By its assignment of error, and motion for new trial, appellant contends that the decision is not sustained by sufficient evidence, and is contrary to law. Briefly stated the facts are as follows: Appellant, an Illinois corporation, is lawfully engaged in the sale of drugs, goods and merchandise, in retail stores in Indiana. Various persons are employed by it in this business, who are paid agreed cash wages. By a supplemental arrangement its employees are privileged to secure from appellant's stores certain goods and merchandise at wholesale cost. An account thereof is kept by appellant and when employees' wages become due, deductions are made for the value of the articles so obtained by such employees and the balance due for wages is paid in cash.

The facts of the case were all stipulated by the parties, leaving the legal questions alone for the court to decide. The appellant, the plaintiff below, contends (1) that no gross income tax became due by reason of the transactions between it and its employees noted; (2) that the transaction involved did not constitute a sale within the gross income tax law of the State of Indiana; (3) and that if the transaction is construed as coming within the gross income tax law of the State of Indiana, such laws violate certain sections of the Indiana and United States Constitutions, hereafter noted. We shall consider each of these contentions in the order stated.

It is the law of Indiana that to constitute gross income a transaction must come clearly within the statutory provisions, providing for such income. In case of doubt the statutes will be construed against the state and in favor of the taxpayer. *Oster* v. *Department of Treasury* (1941), 219 Ind. 313,

317, 37 N. E. (2d) 528; *Dept. of Treasury* v. *International Harvester Co.* (1943), 221 Ind. 416, 421, 47 N. E. (2d) 150; *Department of Treasury* v. *Muessel* (1941), 218 Ind. 250, 254, 255, 32 N. E. (2d) 596.

In arriving at the meaning of a statute it must be considered .as an entirety, each part being considered with reference to all the other parts. Statutes ■ are not to be considered as isolated fragments of law, but as parts of one great system. *The Rushville Gas Co.* v. *The City of Rushville* (1889), 121 Ind. 206, 213, 23 N. E. 72; *Bradley* v. *Thixton* (1889), 117 Ind. 255, 257, 19 N. E. 335; *Morrison* v. *Jacoby* (1887), 114 Ind. 84, 89, 90, 14 N. E. 546, 15 N. E. 806; 50 Am. Jur. § 349 *Statutes* pp. 345, 346.

Judge Elliott stated this proposition well in *Humphries* v. *Davis* (1885), 100 Ind. 274, at page 284, thus:

> "A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted. . . . Statutes are to be so construed as to make the law one uniform system, not a collection of diverse and disjointed fragments."

The title of the original gross income tax statute of Indiana, Acts 1933, ch. 50, p. 388, is as follows:

> "An Act to provide for the raising of public revenue by imposing a tax upon the receipt of gross income, to provide for the ascertainment,

assessment and collection of said tax, and to provide penalties for the violation of the terms of this act, and declaring an emergency."

Clause (f) of Section 1 thereof defines gross income as follows:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, and the gross receipts of the taxpayer derived from trades, businesses or commerce, and the gross receipts proceeding or accruing from the sale of property, tangible or intangible, real or personal, or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated, and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses; . . . ."

The definition is extended by clause (m) § 1, Acts 1937, ch. 117, pp. 604, 606, and again by clause (m) § 1, Acts 1941, ch. 140, pp. 420, 424, and also clause (m) Section 1, Acts 1943, ch. 144, pp. 425, 428. § 64-2601, Burns' 1943 Replacement.

However, the definition of "gross income" contained in clause (f) of § 1 of the 1933 Acts, *supra,* seems clearly to include the receipts from the transactions between appellant and its employees, as "gross income," since it constitutes a part of "the gross receipts of the taxpayer derived from trades, businesses or commerce." The same definition is contained in clause (m) § 1 of the 1937 Acts at page 606; in clause (m) § 1 of the 1941 Acts at pages 420, 421, and in clause (m) § 1, ch. 144, Acts 1943 pages 425, 428. In each of the acts cited it is also provided in

appropriate language that the taxable amounts shall be the gross receipts "without any deductions on account of the costs of the property sold . . . or any other expenses whatsoever, and without any deductions on account of losses." The latter amendments indicate a sustained legislative intent as to what shall be considered gross income, existing from the enactment of the first income tax law in 1933. In the involved transactions appellant received the labor of its employees for the value of the goods, wares and merchandise taken by them agreeable with the "supplemental arrangement" and to the extent of the value of the same, it was relieved of the payment of their wages in cash. In other words appellant retained in cash of its employees' wages the value of the merchandise taken by them. Appellant voluntarily allowed the employees to take the merchandise at cost. Whether this is a profitable or unprofitable arrangement and privilege is no concern of the state. That it has voluntarily continued the arrangement and granted the privilege year after year since 1923 indicates that appellant believes it is profitable; possibly because, in effect, it increases the wages of the employees without any actual cost to appellant and thus enables appellant to secure and retain capable and faithful employees at a more reasonable wage; and it may establish a loyalty and confidence beneficial alike to employee and employer. Since it has been the ordinary course of appellant's regularly conducted business with its employees for a number of years past we think it constitutes a sale at retail, without regard to whether it results in a profit, a loss or is merely a break-even transaction.

While we think the transactions involved constituted a sale of goods at retail, it is not essential that it

should do so in order to be subject to the provisions of the gross income tax law. It is sufficient for that purpose if it constitutes "gross receipts of the taxpayer derived from trades, businesses or commerce." Certainly it is an income received from appellant's businesses at the various places where it operated its stores and traded with its employees. The arrangement was not a contract—it was a mere privilege granted by appellant which it could withdraw at will, and which any employee could nullify by merely failing to accept.

Appellant contends that the payment of a debt by a debtor does not constitute gross income to the debtor, and therefore, since in this case the appellant merely discharged its wage debt to its employees by the payment in merchandise, no gross income was received by it. This idea is ingenious and needs little enlargement to apply to all appellant's sales. If the buyer should pay before receiving the goods he would thereby make the seller his debtor. If the seller should thereafter deliver the goods to the buyer, the seller would merely be discharging its debt to the buyer and so no gross income would be received by it. We can not follow this reasoning and therefore are unable to agree with appellant's contention.

Appellant further contends that since appellee did not assess gross income tax against it for income received under this arrangement until 1936, when it might have begun this assessment with the effective date of the statute in 1933, "that should be binding upon appellee or at least an excellent indication that the statute was in their minds ambiguous." Evidently appellant was not injured by appellee's failure to assess taxes during the three year period mentioned. The failure to assert its right to assess taxes under

the statute for the time mentioned cannot be binding upon the appellee nor indicate its opinion that the statute is ambiguous. The taxing authorities of the state during the period mentioned, could not by failing to do their duty, or by any act or failure to act, waive the right and duty of the state to assess and collect the taxes for the years following. See *Lavengood* v. *Lavengood* (1947), *ante*, p. 206. 73 N. E. (2d) 685, 687, 688, on the general subject of waiver; also *Ford Motor Co.* v. *Treasury Department*, 323 U. S. 459, 89 L. Ed. 389, 65 Sup. Ct. 347 on the subject of waiver of a state's rights by state officials.

This leads us to a consideration of the constitutional questions presented by appellant. 1. Is the statute as we construe it in violation of § 1 of the Fourteenth Amendment of the Federal Constitution? Appellant contends that it violates the last sentence therein reading, thus:

> "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The contention is that it is a perversion to say that gross income is received by appellant from the arrangement between it and its employees. If this statement were true there would be some substance to the contention, but as we have heretofore shown it is not a perversion but is a reasonable view of the factual situation. The gross income tax law in no way abridges the liberty of contract between appellant and its employees. The liberty of contract which is guaranteed by the Constitution, is freedom from arbitrary or unreasonable restraint; see *West Coast Hotel*

*Company* v. *Parrish* (1936), 300 U. S. 379, 391, 81 L. Ed. 703, 108 A. L. R. 1330, 1334, and is thus necessarily subject to the restraints of due process. Regulation which is reasonable in relation to its subject and is adopted in the interest of the community is due process. The taxation laws of the states are not violative of the Fourteenth Amendment unless they are palpably arbitrary or grossly unequal in application to the persons concerned. *Mount St. Mary's Cemetery Assoc.* v. *Mullins* (1919), 248 U. S. 501, 506, 63 L. Ed. 383, 387. The gross income tax law is neither palpably arbitrary nor grossly unequal in application to the persons concerned. It is not in violation of the Fourteenth Amendment.

Appellant contends that the imposition of the gross income tax upon the sums it receives from its employees under the arrangement noted is in violation of Art. 1, §§ 1 and 23 of the Indiana Constitution. It asserts that its arrangement is a valid employment contract for payment of wages in merchandise, and that when the state considers this transaction a sale of the merchandise entitling it to impose the usual income tax on the receipts therefrom it abridges the freedom of contract guaranteed by § 1 aforesaid. We are wholly unable to follow this argument. The state, by its gross income tax law, makes no effort to abrogate or abridge the arrangement or contract. On the contrary, it affirms the arrangement as a lawful transaction and asks for its tax thereon precisely as it does for every other sale made by appellant or other persons engaged in business in the state. *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379, 66 N. E. 1005, cited by appellant as authority for its position, does not sustain it. In that case the state sought to collect a penalty from the Steel Company because of its failure to pay an employee weekly as required by Acts 1899, pp.

193, 194. No question concerning the right of the state to collect taxes is involved in that case. It is sometimes difficult to distinguish between the two but a tax is not a penalty. *Hodge* v. *Muscatine County* (1904), 196 U. S. 276, 49 L. Ed. 477, 25 Sup. Ct. 237; 23 Am. Jur. *Forfeitures and Penalties*, § 31, page 625. If the language used in the statute were susceptible of two constructions (and we do not think it is in this case) one rendering the act constitutional and the other not, the former must be adopted. *State ex rel. Wilcox* v. *Ryder* (1914), 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449, 1456. The tax assessed in this case is not in conflict with § 1, Art. 1 of the Indiana Constitution.

Article 1, § 23 of the Indiana Constitution provides:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Appellant asserts that "by the Gross Income Tax Act certain employers may pay wage debts in any medium and not constitute a sale of gross income to them" and that appellant is not being treated as other employers in similar circumstances, and that this is a violation of § 23, Art. 1, *supra*. If this assertion were based on fact a serious question would be presented, but appellant has presented no factual basis justifying the assertion. It cites *Needham* v. *Proffit* (1942), 220 Ind. 265, 41 N. E. (2d) 606 as authority, but this case lends appellant no aid, and has an entirely different factual basis. In that case it was held that § 6 of ch. 165, Acts of 1939 prohibiting licensed funeral directors from advertising the price of services etc. and defining advertising as "any form of printed matter, newspaper or otherwise, holding out such facts to the public" was unconstitutional being in direct con-

flict with § 23, Art. 1 of the Indiana Constitution, because it attempted to prohibit advertising in newspapers and by handbills, but allowed such advertising by radio. The gross income tax statute involved in the instant case is not vulnerable to this attack.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 75 N. E. (2d) 788.