239 Ind. 160 (1959)
156 N.E.2d 87
BOOK
v.
BOARD OF FLOOD CONTROL COMMISSIONERS ETC. ET AL.
No. 29,717.
Supreme Court of Indiana.
Filed February 3, 1959.
*162 Walter Myers, Jr., of Indianapolis, for appellant.
Michael B. Reddington, John J. Dillon and M. Walter Bell, all of Indianapolis, for Flood Control District, City of Indianapolis.
Robert D. McCord, Harry T. Ice, David N. Brewer, Robert D. Risch, Robert D. McCord, Jr., and Ross, McCord, Ice & Miller, of counsel, Amicus Curiae.
ARTERBURN, J.
This is a suit for an injunction by the appellant, a citizen and taxpayer of Marion County, on behalf of himself and all other persons similarly situated against the Board of Flood Control Commissioners of the Flood Control District of the City of Indianapolis and other interested parties named as appellees herein. The appellant sought to enjoin the appellees from proceeding with certain flood control projects proposed by the Board of Flood Control Commissioners on the 21st day of February, 1958, to prevent them from taking any action in issuing and offering for sale bonds in the amount of five million dollars to provide for the payment of the project and to enjoin the assessment and levy of any special tax of the Flood Control District for the payment of the bonds.
The appellees are proposing to undertake this flood *163 control project pursuant to the provisions of Chapter 43 of the Acts of the General Assembly for the year 1937, as supplemented and amended (Burns' Indiana Statutes, § 48-4727, et seq.), and in particular pursuant to the purported powers granted to the Board of Flood Control Commissioners, as set forth in Section 4 of that chapter. (Burns' Indiana Statutes, § 48-4730, Subd. 4.)
It is appellant's contention that the chapter and act referred to is unconstitutional and void in that:
"(a) It authorizes the issuance and sale of bonds in the name of the City of Indianapolis; that these bonds are actually an indebtedness of the City of Indianapolis as a municipal corporation and according to the facts brought forth at the trial would create an indebtedness of that City in excess of 2% of the assessed valuation of taxable property within the limits of said City, which is prohibited by Article XIII of the Constitution of the State of Indiana.
"(b) It violates Article I, Section 23 of the Constitution of the State of Indiana and the Fourteenth Amendment to the United States Constitution in that it has granted certain citizens privileges which do not belong equally to all citizens, and it takes from certain citizens and taxpayers their property without due process of law.
"(c) The title to the Act violates Article IV, Section 19 of the Constitution of the State of Indiana in that there are certain subjects embraced in the Act which are not expressed in the title.
"(d) It violates Article XI, Section 12 of the Constitution of the State of Indiana in that the credit of the State is attempted to be given in aid of persons, associations and corporations which is prohibited by said section."
No contention is made as to the manner, method or *164 procedure by which these issues are raised and presented to this court. We take them up in the order named.
Stipulations of the parties state that the five million dollar issue of bonds, if added to the total outstanding indebtedness of the City of Indianapolis, would bring the total bonded indebtedness of that corporation above the 2% constitutional limitation.
The Act under consideration (Acts 1937, ch. 43, p. 258, being §§ 48-4727, et seq., Burns' 1950 Repl.) in general provides that in cities of the first class there shall be a "Board of Flood Control Commissioners" consisting of three [3] members, two [2] of whom are appointed by the mayor, and the third shall be the city civil engineer. The district over which the board has control is fixed by the statute as the territorial limits of the county within which the City of Indianapolis is located and includes all incorporated towns within Marion County. The Board is given power of eminent domain and is empowered to maintain, operate and construct flood control systems and in connection therewith to construct and maintain levees, reservoirs, drains, ditches, and bridges, with the further power to alter, relocate and remove any such natural or artificial structures.
The board is given rather broad powers along with that of cooperating with any department or agency of the United States government or the State of Indiana in carrying out programs for the protection of life and property from floods and water hazards. For the purpose of maintenance, all property within the territorial limits of the district "shall be subject to a special tax for the purpose of providing funds to pay the total costs" of such work. (Burns' § 48-4735.) For the purpose *165 of maintenance and repair a tax not exceeding one cent [1c] on each one hundred dollars [$100] of taxable property is authorized. (Burns' § 48-4741.) The Act further provides for the issuance of bonds which are to be amortized over a period of years out of a special tax levied on all property within the territorial limits of the district. Burns' § 48-4738 provides that it shall be unlawful for the board to issue any bonds "when the total issue for that purpose, including the bonds already issued and to be issued, is in excess of one [1] per cent of the total assessed valuation (after deducting all mortgage exemptions) of the property within said flood control district, ..." The Act further provides with reference to bonded indebtedness: "Said bonds shall not, in any respect, be a corporate obligation or indebtedness of said city, but shall be and constitute an indebtedness of said flood control district, as a special taxing district, and said bonds and interest thereon shall be payable only out of a special tax levied upon all the property of said flood control district as in this act provided;..."
We shall discuss the questions raised as to the constitutionality of this Act in the order stated above.
The appellant first contends that the legislature has unconstitutionally attempted to evade the debt limit of the City of Indianapolis by creating a fictitious political and municipal corporation to take over part of the functions of the City of Indianapolis. Art. XIII, Sec. 1, Constitution of the State of Indiana.
We have recently considered and decided this same question to the contrary in the case of Martin v. Ben Davis Conservancy Dist. (1958), 238 Ind. 502 153 N.E.2d 125, and also to some extent in Book v. State Office Bldg. Comm. (1958), 238 Ind. 120, *166 149 N.E.2d 273, and we need not therefore elaborate to any great extent upon this point.
This project is one of local public improvement and appears to us to come clearly under the principles laid down not only in the above cases, but also in the case of Dept. of Pub. Sanitation v. Solan (1951), 229 Ind. 228, 97 N.E.2d 495.
Flood prevention and control through ditches, levees and drainage systems has long been recognized as a matter of local improvement. Shelbyville and Brandywine Turnpike Company et al. v. Green (1884), 99 Ind. 205; Lewis Tp. Improv. Co. v. Royer (1906), 38 Ind. App. 151, 76 N.E. 1068; Cities and Towns Act 1905, Chap. 129, p. 219; Acts 1915, Chap. 74, p. 143; Acts 1929, Chap. 129, p. 434; Acts 1933, Chap. 26, p. 120.
In Martin v. Ben Davis Conservancy Dist. (1958), 238 Ind. 502, 153 N.E.2d 125, we stated, (at p. 135 of 153 N.E.2d):
"The legislature has the power to directly create, fix and define public improvement districts for drainage, roads and other like improvements." Gilson et al. v. The Board of Commissioners of Rush County (1891), 128 Ind. 65, 27 N.E. 235; Board of Commissioners v. Falk (1943), 221 Ind. 376, 47 N.E.2d 320; Archer, Jr., etc., et al. v. City of Indpls., etc., et al. (1954), 233 Ind. 640, 122 N.E.2d 607 (Sanitary District); Dept. of Pub. Sanitation v. Solan (1951), 229 Ind. 228, 97 N.E.2d 495 (Sanitary District); Johnson v. Board of Park Commissioners (1930), 202 Ind. 282, 174 N.E. 91 (Park District); Board of Com'rs., etc. v. Harrell et al. (1897), 147 Ind. 500, 46 N.E. 124 (Gravel Road District).
The rationale of the above cases is that improvements of a local rather than a political or governmental character may be financed and the costs thereof paid by a special tax or assessment limited to the area benefited.
*167 The cases of Rappaport v. Dept. of Public Health (1949), 227 Ind. 508, 87 N.E.2d 77 and Cerajewski v. McVey (1947), 225 Ind. 67, 72 N.E.2d 650 are constantly urged upon us on questions of this sort as supporting the contrary view. Suffice it to say here they dealt with the governmental functions of maintaining hospitals and schools and could hardly be considered within the category commonly referred to as local improvements. What was said with reference to these cases in the case of Martin v. Ben Davis Conservancy Dist., supra, holds true in this case.
The case of Marion, etc., Traction Co. v. Simmons (1913), 180 Ind. 289, 291, 102 N.E. 132 cited by the appellants is not to be considered as any authority that flood control is not a local public improvement. It merely holds that construction of levees, drains and sewers and "to remove excess water from lands by means of drains, and to guard against the spread of disease by the construction of proper sanitary systems" is a proper function of a city. The recognition that a city may make a local public improvement does not prevent its being performed by another corporation or governmental agency created by the legislature.
"There is no constitutional provision limiting the number of municipal corporations or special taxing districts which the legislature, in its wisdom or its policy, may see fit to create.... Such matter is left for the legislature to determine in exercising its constitutional part of the governmental powers. This court has no right to pass upon the wisdom of the legislative act." Martin v. Ben Davis Conservancy Dist. (1958), supra, 238 Ind. 502, 153 N.E.2d 125, 134; Book v. State Office Bldg. Comm. (1958), 238 Ind. 120, 149 N.E.2d 273.
*168 This court has consistently followed the principle in the interpretation of the constitutional limitations of the legislature that it has the power to create districts for local public improvements, to fix the boundaries thereof, and the method by which the levy and assessment is to be made to maintain and pay for the improvement.
We have previously mentioned that the Act in question specifically provides that the indebtedness of the Flood Control District "shall not, in any respect, be a corporate obligation of indebtedness of said city" and that the funds raised by the special tax are segregated and may be used for no other purpose. The city officials merely act in the capacity of a fiscal agent in the financing of the projected work of the Board. (Burns' § 48-4738.) It is our opinion the Act does not violate the constitutional provision in question.
Another provision of the Constitution of the State of Indiana provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Article 1, § 23 of the Constitution of the State of Indiana.
The contention is made that the commission is given the power to build or relocate bridges, whether on public or privately owned property, and that as a result, it has the power to divert money from public funds to private property and private use. We feel this is a strained construction to be drawn from the language of the Act, and no court or public officer, in carrying out the provisions of the Act, would be warranted in drawing such interpretation or authority from the legislation. If there is any ambiguity in this respect, we are obliged to follow an interpretation *169 in terms which will make the Act constitutional. Any doubts as to interpretation should be resolved in favor of its validity.
"It is the duty of courts to uphold Acts of the Legislature if it is possible to do so within the rules of law, and where there is a doubt as to the constitutionality of a statute, it must be upheld, .. ." Book v. State Office Bldg. Comm. (1958), 238 Ind. 120, 149 N.E.2d 273, 280.
"It is an elementary principle that where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it." 11 Am. Jur., Constitutional Law, Sec. 97, p. 725; Gen. Tel. Co. of Ind. v. Public Serv. Comm. (1958), 238 Ind. 646, 150 N.E.2d 891; Walgreen Co. v. Gross Income Tax Div. (1947), 225 Ind. 418, 427, 75 N.E.2d 784, 1 A.L.R.2d 1014; Miles v. Dept. of Treasury (1935), 209 Ind. 172, 199 N.E. 372, 101 A.L.R. 1359, superseding 193 N.E. 855, 97 A.L.R. 1474; Brindley v. Meara (1935), 209 Ind. 144, 198 N.E. 301, 101 A.L.R. 682.
Appellants contend strongly, however, that the Act under consideration creates an inequality as to the benefits received compared with the special tax paid by each person within the district. The tax is levied ad valorem against all property and it is urged that all taxpayers do not receive the same benefit from the flood control improvements. Along with this constitutional provision which we have under consideration, we have another, which provides in part: "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, ..." Art. 10, § 1, Constitution of the State of Indiana.
*170 In the case of Martin v. Ben Davis Conservancy Dist., supra, (1958), 238 Ind. 502, 153 N.E.2d 125, it was urged upon us that under this provision of the Constitution, the Conservancy Act of Indiana (Acts 1957, ch. 308, p. 851, being §§ 27-1501, et seq., Burns' 1948 Repl.) was unconstitutional because only real estate was taxed within the conservancy district and the personal property exempt, although all the property received the benefits from the work of controlling stream pollution, drainage and irrigation. We there held that the latter provision pertained solely to general tax levies and not to acts of the character under consideration here which involve local public improvements.
In Gilson, et al. v. The Board of Commissioners of Rush County (1891), 128 Ind. 65, 27 N.E. 235, this court considered an act for public use and to pay for same by a general tax levy against all property. The same questions were raised there as to the constitutionality of such a method of raising money to pay for local improvements, when some taxpayers were benefited more by the improvement than others. This court said (at p. 70):
"It is not unusual for the Legislatures of the several States in the Union, in the exercise of the general power of taxation, as well as in the power of local assessments, to create a special taxing district, without regard to municipal or political subdivisions of the States, and to levy a tax on all property within such district by a uniform rule, according to its value, for the purpose of aiding in the construction of public local improvements.
"Our laws providing for street improvements, for the construction of free gravel roads, for the construction of ditches and drains, and for aid in the construction of railroads, are examples of this kind of legislation.
"True, in most cases, such improvements are *171 paid for by local assessments against real property, which, in theory, is benefited to an amount equal to the assessment. But it is by no means universally true that such improvements are paid for by assessments against real estate supposed to be benefited; but, on the contrary, they are often paid for by the assessment of a tax on all property found within the taxing district...."
Likewise, in Board of Com'rs, etc., v. Harrell, et al. (1897), 147 Ind. 500, 505, 46 N.E. 124, it is said:
"For the purpose of making such improvement, the legislature may levy a tax upon all or a part of the property in such district by a uniform rule according to its value, or may charge the cost thereof to the property in such district according to what is known as the `front foot' rule, thus determining in advance what property is benefited, or it may delegate to a subordinate agency the power to ascertain and report the benefit, if any, to the different tracts of real estate within such district. In other words, the legislature may declare that all or a portion of the property within such district is benefited, either according to its value or in proportion to its actual benefit to be determined by the legislature itself or by persons selected for that purpose...."
The wisdom of legislative action in the field of taxation and assessment is not a matter the courts may consider as long as the legislature violates no constitutional provision. Western Adj. Insp. Co. v. Gross Inc. Tax Div. (1957), 236 Ind. 639, 142 N.E.2d 630; Sun Oil Co. v. Gross Income Tax Div. (1958), 238 Ind. 111, 149 N.E.2d 115.
The method of distributing and levying the assessments for the local improvement, so long as there is any reasonable basis for the action, is entirely within the discretion of the legislature. The control of floods, the prevention of property damage, and *172 the elimination of such hazards are matters of general public concern within limited districts. The operation of light, heat, gas, water and other public utilities may be affected by floods and their operation thereby endangered, as well as the work of governmental agencies, such as the police and fire departments. Proper flood control, the legislature may determine, is a matter of general public concern within an area, the costs of which should be borne uniformly by all property owners on an ad valorem basis. Hutchins v. Town of Fremont (1924), 194 Ind. 74, 142 N.E. 3; Gilson et al. v. The Board of Commissioners of Rush County (1891), 128 Ind. 65, 27 N.E. 235; Board of Com'rs, etc., v. Harrell et al. (1897), 147 Ind. 500, 46 N.E. 124; Board of Commissioners v. Falk (1943), 221 Ind. 376, 47 N.E.2d 320; Los Angeles Co. F.C. Dist. v. Hamilton (1917), 177 Cal. 119, 169 Pac. 1028; Cow Creek Valley Flood Prevention Ass'n. v. City of Hutchinson (1948), 166 Kan. 78, 200 P.2d 299.
It is further contended that the title of the Act violates Article IV, § 19 of the Constitution of the State of Indiana, in that there are subjects embraced in the Act which are not in the title. The title of the 1937 Flood Control Act reads as follows:
"AN ACT concerning the department of flood control in cities of the first class, defining its powers and duties, creating flood control districts consisting of such cities and incorporated towns and the county in which they are contained, repealing conflicting laws, and declaring an emergency." Acts 1937, ch. 43, p. 258.
It is urged that since the Act gives the Board the power to construct and repair bridges and also construct and repair streets, roads and highways, the title is not sufficiently broad to cover such powers. It should be noted that these enumerated *173 powers in Section 4 of the Act (Burns' § 48-4730, 1950 Repl.) are preceded by a general statement that the Board of Flood Control Commissioners "shall have full power and jurisdiction to authorize and carry out such projects of flood control and prevention over all rivers, streams and water-courses, and property affected by such projects" within the limits of the county and "in carrying out any such project or projects, shall have full power as follows: ..." The questioned powers with reference to bridges, streets and highways are strictly limited to work involving flood control and would naturally fall within the purview of a title relating to flood control. This court has held that a title broad enough to cover the subject does not require that the title specifically set forth all the separate detailed provisions contained within the body of the Act. Bemis v. Guirl Drainage Co. (1914), 182 Ind. 36, 105 N.E. 496; Marion, etc., Traction Co. v. Simmons (1913), 180 Ind. 289, 102 N.E. 132; Knight & Jillson Co. v. Miller (1909), 172 Ind. 27, 87 N.E. 823.
Finally, the appellants contend that the Flood Control Act violates Article XI, § 12 of the Constitution of the State of Indiana, which states:
"The State shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."
The appellants contend that the law authorizes the commission to raise or borrow money and use the proceeds for constructing bridges belonging to private persons, associations or corporations. (Burns' § 48-4730, par. 4, 1950 Repl.) We have *174 to some extent disposed of this question previously under our interpretation that the authority extended must be limited to the flood control project and in aid thereof. However, a close reading of the section and paragraph reveals that the Board only has power to build public structures or bridges, although such structures may have originally been built by either public or private agencies or individuals. It is certainly necessary that in the control of floods, the Board have the power of constructing bridges in connection with its work. If, in doing so, some private property including bridges, had to be altered, destroyed or rebuilt, where private property is taken in the process, the statutes on eminent domain provide a constitutional remedy. So far as we can find from the language of the statute, it does not give the Flood Control Commission any authority to donate or give its funds or any of its property to any private individuals, firms or corporations. C.C.C. & St. L.R. Co. et al. v. Mumford et al. (1935), 208 Ind. 655, 197 N.E. 826.
We find on the issues presented that the Flood Control Act of 1937 is constitutional. The judgment of the court below is affirmed.
Landis, C.J., and Achor, Bobbitt and Jackson, JJ., concur.
NOTE.  Reported in 156 N.E.2d 87.